# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00374-CV

**Mark Pickett and Barbara Pickett,**
**Appellants**

**v.**

**Texas Mutual Insurance Co., f/k/a Texas Workers' Compensation Insurance Fund,**
**Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
## NO. 99-15029, HONORABLE PATRICK O. KEEL, JUDGE PRESIDING

## O P I N I O N

This appeal concerns the requirement that a party seeking damages for a workers' compensation insurance carrier's alleged delay or denial of medical benefits in bad faith must exhaust administrative remedies at the Texas Workers' Compensation Commission before filing suit. *See American Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 804-05 (Tex. 2001). Appellants Mark Pickett and Barbara Pickett sued Texas Mutual Insurance Company for allegedly delaying or denying medical benefits to Barbara Pickett in bad faith. The trial court dismissed most of the Picketts' claims for want of jurisdiction for failure to exhaust their administrative remedies at the Commission and granted a take-nothing summary judgment against the Picketts on their claims arising from three medical disputes for which the administrative remedies had been exhausted. We affirm.

In December 1995, Barbara Pickett suffered a back injury while performing her job duties for Molly Maid, a home cleaning service. She claims that her back injury resulted in depression and chronic pain in her neck, arms, lower back, and legs. Since 1995, Ms. Pickett has been repeatedly hospitalized for attempted suicide and self-mutilation. She contends that her work-related injury aggravated preexisting psychological conditions.

Texas Mutual is the workers' compensation insurance carrier for Molly Maid. It has paid income and disability benefits to Ms. Pickett for her work-related injury as well as hundreds of thousands of dollars for her healthcare. Beginning in 1997, Texas Mutual denied preauthorization for certain chronic pain management services related to Ms. Pickett's psychological disorders on the basis that those medical services were not related to her compensable injuries or were not reasonable and medically necessary. Under the Texas Workers' Compensation Act, Ms. Pickett was entitled to contest those denied preauthorization requests through an administrative dispute resolution procedure conducted by the Commission's Medical Review Division. *See* Tex. Lab. Code Ann. § 413.031 (West 2006). Ms. Pickett did not, however, submit any disputes concerning the denied preauthorization requests for administrative review at the Commission.

Beginning in 1999, Dr. Sanford Kiser, one of Ms. Pickett's healthcare providers, submitted several billing disputes to the Commission for administrative review. These disputes concerned medical services that Ms. Pickett had already received and for which Texas Mutual had denied reimbursement to Dr. Kiser. The Picketts were not involved in or parties to the billing disputes between Dr. Kiser and Texas Mutual. As a result of the billing disputes, Dr. Kiser obtained

three final orders—two from the Commission and one from the State Office of Administrative Hearings—directing Texas Mutual to reimburse him.[1]

In October 1999, Texas Mutual and Ms. Pickett entered into a Benefit Dispute Agreement. The purpose of the Agreement was to determine which of Ms. Pickett's psychological disorders were causally related to her compensable back injury. Texas Mutual and Ms. Pickett agreed that her diagnosis of major depressive disorder and pain disorder were causally related to the compensable back injury, but that her diagnosis of post-traumatic stress disorder, mixed personality disorder, and dissociative disorder were not related to the compensable back injury. The Agreement did not address or determine what medical treatments were related to Ms. Pickett's compensable psychological conditions, what treatments would be medically necessary and reasonable for those conditions, or what fees should be paid under the Commission's rules for treating those conditions.

---

[1] The trial court's findings of fact provide the following information about the final administrative orders obtained by Dr. Kiser:

a.  In MDR Tracking No. M5-00-0165-01, decided March 5, 2001, MRD determined that Texas Mutual incorrectly denied Dr. R. Sanford Kiser's $48.00 bill for preparation of Barbara Pickett's hospital discharge report on October 26, 1998.

b.  In SOAH Docket No. 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.M4, an administrative law judge found Texas Mutual responsible for paying Dr. Kiser's inpatient encounters with Barbara Pickett during three periods of her hospitalization (July 29, 1997 to August 15, 1997; September 15, 1997 to September 22, 1997, and from January 1, 1998 to February 6, 1998); and

c.  In MDR Tracking No. M4-99-5645-01, decided April 11, 2000, MRD found that Texas Mutual owed Dr. Kiser $700.00 for Barbara Pickett's seven psychotherapy sessions during her hospitalization from January 5, 1998 to February 6, 1998.

Therefore, Texas Mutual remained responsible for reviewing all of Ms. Pickett's submitted medical bills and preauthorization requests to determine whether a medical treatment related to her compensable injuries or her non-compensable injuries. The Agreement did not relieve Ms. Pickett or her healthcare providers of their obligations to exhaust administrative remedies regarding any disputes over specific medical benefits.

Two months after entering into the Agreement, the Picketts sued Texas Mutual asserting violations of the Texas Insurance Code and the Deceptive Trade Practices Act, breach of fiduciary duty and duty of good faith and fair dealing, intentional infliction of emotional distress, negligence, and negligent misrepresentation. They alleged that Texas Mutual wrongfully delayed or denied preauthorization for certain medical services and prescriptions related to Ms. Pickett's chronic pain condition, causing physical and psychological injury to Ms. Pickett beyond the extent of her work-related injury.[2]

In 2001, the Texas Supreme Court decided *American Motorists Insurance Co. v. Fodge*, which held that a trial court does not have subject matter jurisdiction over bad faith claims arising from allegedly delayed or denied workers' compensation benefits unless and until the worker obtains a timely, final administrative decision from the Texas Workers' Compensation Commission that the worker is entitled to the medical benefits in dispute. 63 S.W.3d at 804-05. Although Texas Mutual filed a motion to dismiss before *Fodge* was decided, the suit was abated by agreement of the parties until the issuance of that opinion. After *Fodge* was decided, the trial court held a hearing and

---

[2] The trial court entered a finding of fact that "Texas Mutual did not prospectively deny responsibility for any medication prescribed to Ms. Pickett." The Picketts do not dispute this finding of fact on appeal.

initially denied the motion. Texas Mutual then filed a motion for reconsideration, a motion for partial summary judgment, a no evidence motion for summary judgment, and a traditional motion for summary judgment. The trial court granted the motion to reconsider, the motion to dismiss, and the motion for summary judgment. Because the Picketts did not obtain administrative orders from the Commission that Ms. Pickett was entitled to any of the medical benefits they claim were improperly delayed or denied, the trial court dismissed most of the Picketts' claims for want of jurisdiction. The trial court also granted a take-nothing summary judgment against the Picketts on their claims arising from the only final administrative orders in the record—the three orders directing Texas Mutual to reimburse Dr. Kiser for medical services that Ms. Pickett had already received. The court entered findings of fact and conclusions of law in support of the order of dismissal.

On appeal, the Picketts assert that (1) the application of the *Fodge* opinion to their case is unconstitutional; (2) their tort and statutory claims seeking damages other than the payment of workers' compensation benefits do not require administrative exhaustion; (3) claims subject to the Benefit Dispute Agreement do not require administrative exhaustion; (4) Texas Mutual waived the requirement that the Picketts exhaust their administrative remedies or, alternatively, that they exhausted their administrative remedies; (5) the futility exception to the exhaustion requirement applies; (6) the trial court erred in admitting certain evidence; (7) summary judgment is improper on claims over which the trial court had jurisdiction; and (8) the trial court's summary judgment is not a final judgment.

5

**The Constitutional Application of *Fodge***

The Picketts assert numerous violations of their constitutional rights from the trial court's application of the *Fodge* opinion to their claims. First, they contend that the *Fodge* opinion established a new rule of law and, as such, cannot be applied retroactively to their claims arising before the issuance of that opinion.

Prior to the issuance of *Fodge*, it was well established that the Texas Workers' Compensation Act vested the power to award compensation benefits solely in the Commission, subject to judicial review. *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 612 (Tex. 1996) (citing *Brannon v. Pacific Employers Ins. Co.*, 224 S.W.2d 466, 468 (Tex. 1949); *Traders & Gen. Ins. Co. v. Bailey*, 94 S.W.2d 134, 135 (Tex. 1936); *Commercial Casualty Ins. Co. v. Hilton*, 87 S.W.2d 1081, 1083 (Tex. 1935)). In *Saenz,* the Texas Supreme Court stated that "[a]llowing courts to award damages for wrongful deprivation of benefits would circumvent the Commission's jurisdiction." 925 S.W.2d at 612. Relying on *Saenz*, the *Fodge* court held that "just as a court cannot award compensation benefits, except on appeal from a Commission ruling, neither can it award damages for a denial in payment of compensation benefits without a determination by the Commission that such benefits were due." 63 S.W.3d at 804. Thus, the *Fodge* opinion interpreted existing law concerning exhaustion of administrative remedies in the workers' compensation context and did not, as the Picketts contend, establish a new rule of law.

Additionally, there are no constitutional prohibitions against applying the *Fodge* opinion to the Picketts' claims that arose prior to the issuance of that opinion in 2001. Instead, the general rule is that decisions of the supreme court apply retrospectively. *Bowen v. Aetna Cas. & Sur.*

6

*Co.*, 837 S.W.2d 99, 100 (Tex. 1992); *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992). The decision of whether a supreme court case applies only prospectively lies within the discretion of the supreme court. *See Lohec v. Galveston County Comm'rs Court*, 841 S.W.2d 361, 366 (Tex. 1992). In *Lohec*, the supreme court stated:

> Our decisions operate retroactively unless this court exercises its discretion to modify that application. When determining whether to exercise our discretion to modify retroactive application, this court weighs, among other things, considerations of fairness, equity and policy including whether the decision involves an issue of first impression and whether retroactive application could produce substantial inequitable results.

*Id.* (citations omitted). Because the *Fodge* opinion does not contain language indicating an intent to apply only prospectively, we conclude that the supreme court intended *Fodge* to apply retrospectively. *See Camacho v. Samaniego*, 954 S.W.2d 811, 825 (Tex. App.—El Paso 1997, writ denied).

The Picketts also assert that the administrative exhaustion process required by *Fodge* violates their constitutional rights. In particular, they challenge the trial court's application of an administrative rule that limits the time in which a party can seek a review of a medical dispute with the Commission to one year from the date(s) of the medical service in dispute. *See* 28 Tex. Admin. Code § 133.307(d)(1) (2004).[3] The *Fodge* court considered the effect of such a rule:

> American Motorists argues that the time for Fodge to assert claims for medical benefits in the Commission has expired. If that be true, and she can no longer obtain

---

[3] We cite to the version of the Texas Administrative Code that was in effect at the time of the trial court's final judgment in March 2004.

7

the benefits she says she should have had, then her damage claims related to American Motorists' refusal to provide her such benefits would no longer be viable and should be dismissed.

63 S.W.3d at 804. Similarly, the trial court in this case issued a conclusion of law that "the time for Barbara Pickett or her healthcare providers to pursue adjudication of the medical benefits that Pickett identified in her discovery responses in this case has expired because more than one year has passed from the date of service."

The Picketts first contend that the application of the Commission's one-year rule violates the constitutional prohibition against retroactive laws. *See* Tex. Const. art. I. § 16 ("No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made."). "'While statutory retroactivity has long been disfavored, deciding when a statute operates 'retroactively' is not always a simple or mechanical task.'" *Quick v. City of Austin*, 7 S.W.3d 109, 132 (Tex. 1999) (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 280 (1994)). In *Quick,* the Texas Supreme Court took particular note of the following language from the U.S. Supreme Court's opinion in *Landgraf* :

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment. The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event.

8

*Id.* (quoting *Langraf,* 511 U.S. at 269-70) (citations and footnote omitted). Applying these principles, this Court has held that a statute is not retroactive merely because it draws upon antecedent facts for its operation. *Board of Med. Examiners for Tex. v. Nzedu*, No. 03-05-00032-CV, 2007 Tex. App. LEXIS 3419, at *17-18 (Tex. App.—Austin May 4, 2007, no pet.); *General Dynamics Corp. v. Sharp*, 919 S.W.2d 861, 866 (Tex. App.—Austin 1996, writ denied); *see also Southwestern Bell Tel. Co. v. Public Util. Comm'n*, 31 S.W.3d 631, 639 (Tex. App.—Austin 2000), *aff'd*, 92 S.W.3d 434 (Tex. 2002); *Upjohn Co. v. Rylander,* 38 S.W.3d 600, 612 (Tex. App.—Austin 2000, pet. denied); *American Home Assur. v. Texas Dep't of Ins*., 907 S.W.2d 90, 94 (Tex. App.—Austin 1995, writ denied) (quoting *Lewis v. Fidelity & Deposit Co.*, 292 U.S. 559, 571 (1933)).

The Commission's one-year rule was adopted in 1991 and has been in effect at all times relevant to the Picketts' lawsuit. *See* 16 Tex. Reg. 2830 (1991) (originally codified at 28 Tex. Admin. Code § 133.305) (proposed May 21, 1991). The record reflects that the Picketts' claims began to accrue in 1997, almost six years after the rule's effective date. Thus, the rule is only retrospective in the sense that it looks back to the original date(s) of the medical service(s) in question to determine whether the Picketts could timely file any of their disputes at the Commission, which, in turn, governs the appropriate remedy for the trial court's lack of jurisdiction—abatement or dismissal. *See Fodge*, 63 S.W.3d at 805. Such a look-back feature in the application of the Commission's one-year rule to the Picketts' claims does not violate the constitutional prohibition against retroactivity. *See Nzedu*, No. 03-05-00032-CV, 2007 Tex. App. LEXIS 3419, at *17-18; *General Dynamics Corp.*, 919 S.W.2d at 866.

The Picketts also contend that the administrative exhaustion process required by *Fodge*, including the application of the Commission's one-year rule, violates their due process rights. The due-course-of-law provision in article I, section 19 of the Texas Constitution, similar to the federal Due Process Clause, contains both procedural and substantive components. Tex. Const. art. I, § 19; *see Rylander v. Palais Royal*, 81 S.W.3d 909, 916 (Tex. App.—Austin 2002, pet. denied). Due process at a minimum requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner. *Texas Workers' Comp. Comm'n v. Patient Advocates*, 136 S.W.3d 643, 658 (Tex. 2004) (citing *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Perry v. Del Rio*, 67 S.W.3d 85, 92 (Tex. 2001)).

Pursuant to section 413.031 of the Workers' Compensation Act, a party, including a healthcare provider, may submit disputes regarding medical services that have been provided or for which authorization is sought for review at the Commission. *See* Tex. Lab. Code Ann. § 413.031(a); *Continental Cas. Ins. Co. v. Functional Restoration Assocs.*, 19 S.W.3d 393, 396 (Tex. 2000). The Commission's one-year rule operates within this dispute resolution scheme to prospectively limit the amount of time a party may take to file a dispute at the Commission to one year from the date of the disputed medical service. *See* 28 Tex. Admin. Code § 133.307(d)(1). Under *Fodge*, once a claimant receives a determination from the Commission that a claimant is entitled to a disputed benefit, the trial court will have subject matter jurisdiction over bad-faith claims arising from the alleged delay or denial of that benefit. *See* 63 S.W.3d at 804-05.

Requiring a party seeking damages for a workers' compensation insurance carrier's alleged delay or denial of medical benefits in bad faith to exhaust administrative remedies at the

10

Commission before filing suit does not deprive that party an opportunity to be heard at a meaningful time and in a meaningful manner. Rather, the exhaustion process provides automatic access to the Commission's dispute resolution procedures and subsequent access to the courts if the Commission determines that a claimant is entitled to a disputed benefit. Accordingly, we hold that requiring the Picketts to exhaust their administrative remedies at the Commission did not violate their due process rights. Our holding also applies to the Picketts' arguments alleging violations of the Due Process Clause of the Fourteenth Amendment to the United States Constitution. U.S. Const. amend. XIV, § 1; *Palais Royal*, 81 S.W.3d at 916 (citing *Norris v State*, 788 S.W.2d 65, 72 (Tex. App.—Dallas 1990, writ ref'd.) (stating that courts have historically equated due-course-of-law provision of Texas Constitution with Due Process Clause of United States Constitution)).

Lastly, the Picketts contend that the exhaustion process required by *Fodge* violates the open courts provision of the Texas Constitution. The Texas open courts provision prohibits the legislature from abrogating well established, common law causes of action unless the reason for doing so outweighs a litigant's constitutional right of redress. *See* Tex. Const. art 1, §13; *Subaru Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 227 (Tex. 2002). The Texas Supreme Court has consistently declined to construe statutes to deprive citizens of common law rights unless the legislature clearly expressed that intent. *Cash Am. Int'l, Inc. v. Bennett*, 35 S.W.3d 12, 16 (Tex. 2000). The *Fodge* court recognized that the legislature had not called for the complete removal of bad faith liability in the context of workers' compensation:

> The Texas Workers' Compensation Insurance Fund argues as amicus curiae that the highly regulated nature of the compensation process should preclude liability for bad faith under any circumstances. While we need not go so far here, we do conclude

11

that the process precludes bad faith liability for denying benefits to which the claimant is not entitled.

63 S.W.3d at 804. Thus, the *Fodge* exhaustion requirement does not violate the open courts provision because a workers' compensation claimant who has received a final administrative decision from the Commission that he is entitled to a disputed benefit is not precluded from pursuing a bad faith claim against a workers' compensation insurance carrier in a court of law.

**The Exclusive Jurisdiction of the Commission**

The Picketts contend that the trial court had jurisdiction over their tort and statutory claims for damages other than the payment of workers' compensation benefits. They argue that because these claims are "not predicated on a denial of benefits," the Commission does not have exclusive jurisdiction over them. We disagree. The determination of whether any type of claim is within the exclusive jurisdiction of the Commission depends on whether the claim is based on a claimant's entitlement to benefits. *See In re Texas Mut. Ins. Co.*, 157 S.W.3d 75, 81 (Tex. App.—Austin 2004, no pet.) (citing *Fodge*, 63 S.W.3d at 805). The issue is not whether a particular type of claim, such as a tort or statutory claim, is within the exclusive jurisdiction of the Commission. Rather, the determination of whether any type of claim is within the exclusive jurisdiction of the Commission depends on whether the claim is based on an alleged delay or denial of a workers' compensation benefit.

The *Fodge* court recognized that the Commission's exclusive jurisdiction may extend to tort claims and statutory violations: "[Fodge's] claim for damages from denied medical treatment is made no more viable simply by restating it under the other legal authorities she asserted—

negligence, fraud, and statutory violations." 63 S.W.3d at 804. Similarly, in this case, the Picketts' tort and statutory claims are based on alleged denials, delays, interruptions, and premature terminations of medical treatment. The Picketts also alleged that Texas Mutual "represent[ed] certain benefits existed when they apparently did not, and delay[ed] or refus[ed] to allow [Ms. Pickett] to obtain her medications." On this record, it is difficult to see how any of the Picketts' claims are "not predicated on the denial of benefits."

The Picketts also argue that these claims do not fall within the exclusive jurisdiction of the Commission because they seek damages other than denied medical benefits. However, the *Fodge* court explained:

> [t]o award damages equal to the cost of denied medical care is tantamount to ordering that the care be paid for and would, as we said in *Saenz*, circumvent the Commission's exclusive authority to decide that issue. The same is true for Fodge's other claims for damages based on a denial of benefits.

63 S.W.3d at 804. These "other claims for damages" included statutory damages, mental anguish, past and future loss of wages, impairment of credit reputation, and attorney's fees. *Id.* at 803. Similarly, because all of the Picketts' claimed damages concern an alleged delay or denial of benefits, exhaustion of remedies is required.

The Picketts also assert that their claims premised on delay, as opposed to denial, in the payment or preauthorization of medical benefits do not require exhaustion at the Commission. However, the holding of *Fodge* does not except from exhaustion claims premised on an insurance carrier's alleged bad faith delay in paying or preauthorizing benefits. Ms. Fodge was allowed to seek judicial review of one claim based on the carrier's bad faith delay in handling her claim and paying

13

her compensation benefits. *Id.* The court distinguished this claim from other "claims for benefits on which [Fodge] has never prevailed." *Id.* at 804-05. This distinction suggests that the court determined that Ms. Fodge *had* exhausted her administrative remedies on this one claim, not that exhaustion was excused for all claims based on an alleged delay in the payment of benefits. Furthermore, the Fort Worth Court of Appeals has held that the process described in *Fodge* applies to claims based on an alleged delay in payment of benefits. *See Malish v. Pacific Employers Ins. Co.,* 106 S.W.3d 744, 746-47 (Tex. App.—Fort Worth 2003, no pet.). Therefore, the Picketts' claims based on alleged delays in the payment or preauthorization of medical benefits are not exempt from exhaustion at the Commission.

Lastly, the Picketts argue that Texas Mutual waived its right to demand exhaustion by not filing certain required notices contesting the compensability or relatedness of Ms. Pickett's medical services. We disagree. The Commission's exclusive jurisdiction affects a trial court's subject matter jurisdiction over the controversy. *Subaru*, 84 S.W.3d at 221. Subject matter jurisdiction is an issue that may be raised for the first time on appeal, and it may not be waived by the parties. *Waco Indep. Sch. Dist. v. Gibson,* 22 S.W.3d 849, 850 (Tex. 2000) (citing *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993)). Therefore, the Picketts' argument that Texas Mutual waived its right to contest the compensability or relatedness of the Picketts' claims is not a basis for defeating jurisdiction but merely identifies one of the issues that the Commission would consider when determining Ms. Pickett's benefits claims. *In re Texas Mut. Ins. Co.*, 157 S.W.3d at 81.

**The Benefit Dispute Agreement**

The Picketts contend that any claims that were subject to the October 1999 Benefit Dispute Agreement do not require exhaustion at the Commission. However, the Agreement between Texas Mutual and Ms. Pickett only determined which of Ms. Pickett's psychological disorders were causally related to her compensable back injury. The Agreement did not determine which medical treatments were appropriate for those psychological disorders or address Ms. Pickett's entitlement to medical benefits in any way. We believe that *Fodge* is dispositive in situations where, as here, the parties have only agreed as to the extent of the claimant's compensable injuries. Ms. Fodge and her insurance carrier had a dispute over the compensability of the injury in question and went through the benefit review process. *See* 63 S.W.3d at 802. The benefit review officer found that Ms. Fodge's injury, was, in fact, compensable. *Id.* Nevertheless, the court held that Ms. Fodge's claims arising from denied medical benefits were subject to the exhaustion requirement because "[n]ever in the proceedings at the Commission did Fodge claim medical benefits or complain that American Motorists had denied medical benefits, nor did any medical provider claim payment for medical services provided to Fodge." *Id.*

In this case, the record shows that the parties agreed that Ms. Pickett's diagnosis of major depressive disorder and pain disorder were causally related to the compensable back injury, but that Ms. Pickett's diagnosis of post-traumatic stress disorder, mixed personality disorder, and dissociative disorder were not related to the compensable back injury. Because this Agreement did not resolve any issues concerning Ms. Pickett's entitlement to medical benefits, the Picketts were

15

required to exhaust their administrative remedies and obtain a favorable determination from the Commission before proceeding to court.

The Picketts argue that their case is controlled by *Gregson v. Zurich American Insurance Co.,* 322 F.3d 883 (5th Cir. 2003). The insurance carrier in *Gregson* found the plaintiff's injury compensable and agreed to provide coverage for back surgery. *Id.* at 886. The carrier then refused payment for the medication prescribed to the plaintiff following surgery. *Id.* at 884. The plaintiff sued the carrier seeking to recover damages for bad faith. *Id.* The *Gregson* court recognized *Fodge,* but held that the plaintiff was not required to exhaust his administrative remedies because the insurance carrier had agreed to provide coverage for Gregson's back surgery and all other reasonable and necessary benefits incident to the treatment, including the post-surgery prescription. *Id.* at 886. Unlike the insurance carrier in *Gregson*, Texas Mutual never agreed to provide coverage to Ms. Pickett for any specific kind of medical treatment. Instead, Texas Mutual was, at all times, required to approve or deny requests for preauthorization for Ms. Pickett's various medical treatments based solely upon the reasonable and necessary medical health care required to treat her compensable injury. *See* 28 Tex. Admin. Code § 134.600 (2004). Texas Mutual was also required to retrospectively review all complete medical bills and pay for or deny payment in accordance with the Act, rules, and the appropriate Commission fee and treatment guidelines. *Id.* § 133.301 (2004). Thus, *Gregson* does not control here.

**Exhaustion of Administrative Remedies**

The Picketts contend that because of the large number of medical charges or claims in dispute, they should be excused from the requirement that they exhaust their administrative

16

remedies because such exhaustion would be impractical. The requirement of exhaustion of administrative remedies does have a number of exceptions. Cases in which exhaustion of administrative remedies will cause irreparable harm, instances where administrative remedies are inadequate, and cases which involve a claim that the agency is acting beyond its jurisdiction or is applying an unconstitutional statute are examples of circumstances under which the requirement of exhaustion will be relaxed. *See Central Power & Light Co. v. Sharp*, 960 S.W.2d 617, 618 (Tex. 1997); *Jones v. Dallas Indep. Sch. Dist.*, 872 S.W.2d 294, 296 (Tex. App.—Dallas 1994, writ denied); *Texas State Bd. of Pharmacy v. Walgreen Texas Co.*, 520 S.W.2d 845, 848 (Tex. App.—Austin 1975, writ ref'd n.r.e.). However, the Picketts do not cite, and we have not found, any authority for the proposition that exhaustion will be or should be excused simply due to the number of medical charges or claims in dispute. Indeed, such an exception for claims subject to the Texas Workers' Compensation Commission's jurisdiction would be in direct conflict with the supreme court's decision in *Fodge*. Consequently, we decline to adopt such an exception here.

The Picketts also contend that they should be excused from exhausting their administrative remedies because the Commission does not have the statutory authority to grant the damages they seek for physical pain and suffering they claim is the result of Texas Mutual's denial of coverage. However, as noted in *Fodge*, claims for extracontractual damages based on a failure to pay or delay in paying medical benefits cannot relieve a claimant from exhausting administrative remedies before the Commission when the entitlement to the medical benefits is in dispute. *See* 63 S.W.3d at 804-05. Instead, under *Fodge*, the Picketts can only bring their claims for extracontractual damages based on an alleged delay or denial of medical benefits to court after

17

obtaining a determination from the Commission that Ms. Pickett was entitled to the medical benefits in question. *Id.*

Lastly, the Picketts argue that the trial court's delay in deciding Texas Mutual's motion to dismiss should excuse their failure to exhaust administrative remedies. The record shows that after Texas Mutual filed its motion to dismiss in January 2000, the lawsuit was abated by agreement of the parties for three reasons: to discuss settlement, because of the Picketts' counsel's illness, and to await the supreme court's decision in *Fodge*. Because the Picketts agreed to abate their lawsuit, they cannot complain on appeal about the ensuing delay in deciding Texas Mutual's motion to dismiss. Throughout the period of abatement, the Picketts were entitled to exhaust their remedies at the Commission. They were also on notice that Texas Mutual's motion to dismiss was based on their failure to exhaust administrative remedies. Therefore, we are not persuaded that the Picketts' failure to exhaust their claims at the Commission should be excused.

Alternatively, the Picketts contend that the trial court should not have dismissed their claims because they "submitted" certain claims to the Commission and "orally requested" that the Commission reconsider certain claims. They assert that these actions constitute exhaustion. However, under *Fodge*, claims arising from an insurance carrier's alleged delay or denial of medical benefits are exhausted only when the claimant receives a final determination from the Commission that he was actually entitled to the medical benefits in dispute. 63 S.W.3d at 804. Aside from the three Commission orders concerning the billing disputes between Texas Mutual and Dr. Kiser, there is no evidence in the record that the Picketts received a final order from the Commission on any of their claims in this lawsuit. Assertions by the Picketts that they submitted certain claims to the

18

Commission or made oral requests for the Commission to reconsider certain claims are not evidence that the Commission actually reviewed the Picketts' benefit disputes or issued orders that Ms. Pickett was actually entitled to medical benefits. Therefore, we overrule the Picketts' assertion that they had exhausted certain claims.

**Evidentiary Rulings**

The Picketts made the following evidentiary objections at the hearing on Texas Mutual's motion for reconsideration of the motion to dismiss, which they re-assert on appeal: (1) an objection to the introduction of oral testimony;[4] (2) an objection to the testimony of Texas Mutual's witnesses, Rick Ball, on the grounds that he was allegedly not disclosed as a witness in response to the Picketts' requests for disclosure or interrogatories; and (3) an objection to a chart documenting the requests for preauthorization of Ms. Pickett's medical care and Texas Mutual's responses, on the grounds that the underlying documents had not been produced. "To obtain reversal of a judgment based upon error of the trial court in admission or exclusion of evidence, the following must be shown: (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment." *See* Tex. R. App. P. 44.1; *Gee v. Liberty Mut. Fire Ins. Co.*, 765 S.W.2d 394, 396 (Tex. 1989).

First, the trial court did not abuse its discretion by permitting live testimony at the hearing on the motion for reconsideration of the motion to dismiss. A motion to dismiss is the

---

[4] In their brief, the Picketts allege that the trial court allowed oral testimony at the hearing on Texas Mutual's motion for summary judgment. However, the record reflects that the disputed testimony was heard at the February 24, 2004 hearing on Texas Mutual's motion for reconsideration of its motion to dismiss.

19

functional equivalent of a plea to the jurisdiction challenging the trial court's authority to determine the subject matter of a cause of action. *Lacy v. Bassett*, 132 S.W.3d 119, 122 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000)). The Texas Supreme Court has held that "a court deciding a plea to the jurisdiction is not required to look solely to the pleadings but may consider other evidence and must do so when necessary to resolve the jurisdictional issues raised." *Blue*, 34 S.W.3d at 555. Because the record shows that the disputed testimony in this case went to the issue of the trial court's jurisdiction to hear the Picketts' claims, we conclude that the trial court did not abuse its discretion by allowing the disputed testimony at the hearing.

As for the Picketts' second objection, Texas Mutual's responses to the Picketts' requests for disclosure or interrogatories are not included in the record. The record does include two affidavits from Mr. Ball in support of Texas Mutual's motion for summary judgment and motion to dismiss. Additionally, Texas Mutual attempted to call Mr. Ball to testify at the first hearing on the motion to dismiss in July 2003. On this record, we conclude that the Picketts were not harmed or surprised when Mr. Ball was called to present testimony at the February 2004 hearing on the motion for reconsideration of the motion to dismiss, and that his testimony did not lead to the rendition of an improper judgment.

With respect to the Picketts' third objection, we conclude that the trial court's admission of the chart documenting the requests for preauthorization of Ms. Pickett's medical care and Texas Mutual's responses, if error, was harmless error. The Picketts contend that the chart should not have been admitted because the underlying documents were not produced. The record

20

shows that counsel for the parties disagreed on whether another judge had denied the requested discovery or simply had not ruled on this issue. Whether or not this chart is a part of the evidentiary record, under *Fodge*, the trial court had jurisdiction only over claims arising from the three final Commission orders adverse to Texas Mutual concerning medical services that Ms. Pickett had already received from Dr. Kiser. We conclude that this chart documenting Ms. Pickett's preauthorization requests did not have any bearing on the trial court's lack of jurisdiction over the Picketts' unexhausted claims and did not lead to the rendition of an improper judgment.

The Picketts also contend that they were unable to adequately respond to Texas Mutual's motion for summary judgment and motion to dismiss due to an alleged lack of discovery. Under Texas law, when a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file in the trial court either an affidavit explaining the need for further discovery or a verified motion for continuance. *Tenneco, Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996). The record shows that the Picketts filed two motions for continuance that were granted. However, the substance of these motions did not allege a need for further discovery to respond to Texas Mutual's motion for summary judgment. Therefore, we conclude that they have not preserved this point of error on appeal. *See* Tex. R. App. P. 33.1.

**Summary Judgment**

We review the district court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion. *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). We must affirm the

21

summary judgment if any of the grounds presented to the district court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Sheshunoff v. Sheshunoff*, 172 S.W.3d 686, 692 (Tex. App.—Austin 2005, pet. denied).

Pursuant to *Fodge,* the trial court had jurisdiction over and granted summary judgment on the Picketts' claims associated with the only three final Commission orders in the record: (1) a $48 bill for a hospital discharge report prepared by Dr. Kiser; (2) several bills for Dr. Kiser's inpatient encounters with Ms. Pickett during three periods of hospitalization; and (3) a $700 bill for psychotherapy services provided by Dr. Kiser. These three orders were entered in proceedings between Dr. Kiser and Texas Mutual and were not appealed by either party. The Picketts were not parties to these proceedings. In its motion for summary judgment, Texas Mutual asserted, among other things, that it is not legally responsible to the Picketts for the results of the Commission's denial of payment to Dr. Kiser in those disputes. We agree.

The Texas Workers' Compensation Act makes the employee's obligation to pay medical bills secondary to that of the insurer. *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994) (citing *Smith v. Stephenson*, 641 S.W.2d 900, 902 (Tex. 1982)). Moreover, it prohibits healthcare providers from trying to collect from the employee unless and until the Commission rules that the carrier is not responsible for payment. *See id.* As a result, the Texas Supreme Court will not hold an insurance carrier legally accountable to a claimant if the claimant is subjected to collection efforts by her healthcare providers before the Commission has determined that the carrier is not responsible for payment. *See id.*

22

The Picketts contend that they have incurred damages connected with Texas Mutual's denial of payment for these three benefits because they have "received numerous collection notices from healthcare providers for the medical expenses that have not been paid." However, there is no evidence in the record that the Commission ruled that Texas Mutual was not responsible for payment for any of these three benefits. Instead, the evidence is conclusive that the Commission ordered Texas Mutual to pay Dr. Kiser for these services. Accordingly, Texas Mutual is not liable to the Picketts for whatever damages they may have incurred as a result of receiving collection notices from Dr. Kiser for these medical treatments. *See id.* Any dispute regarding the collection efforts by Dr. Kiser against the Picketts is between the Picketts and Dr. Kiser under these circumstances.

**Finality of Judgment**

The Picketts argue that the trial court's judgment is not final because the trial court should not have dismissed some of their claims. The general rule, with a few exceptions not implicated here, is that an appeal may be taken only from a final judgment—that is, a judgment disposing of all pending parties and claims. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). Here, the judgment, which is labeled "final judgment," dismissed without prejudice the claims over which the trial court lacked jurisdiction and granted a take-nothing summary judgment on the claims over which it had jurisdiction. Because this judgment appears final on its face and disposes of all of the Picketts' claims, we conclude that it is a final judgment. *Id.* at 200.

**Conclusion**

The exhaustion process required by *Fodge* is constitutional and applies to all of the Picketts' claims, including tort and statutory claims for damages other than workers' compensation benefits, arising from an alleged delay or denial of benefits. The trial court correctly dismissed the Picketts' claims concerning alleged delays or denials of medical benefits for which the Picketts did not obtain a timely final determination from the Commission that Ms. Pickett was entitled to the benefits in dispute. The trial court had jurisdiction over the Picketts' claims arising from the billing disputes between Dr. Kiser and Texas Mutual, which resulted in three final Commission orders adverse to Texas Mutual. However, because Texas Mutual is not liable to the Picketts for any alleged damage the Picketts may have incurred as a result of receiving additional collection notices from Dr. Kiser regarding the benefits that were the subject of the three billing disputes that were heard before the Commission, we conclude that the trial court correctly granted summary judgment against the Picketts on those claims.

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Puryear, Waldrop and Henson

Affirmed

Filed: July 26, 2007

24