# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00674-CV

**Mark Smith d/b/a Design Center, Appellant**

**v.**

**Autodesk, Inc. and Christopher S. Canada Enterprises, Inc. d/b/a
On-Site Computer Solutions, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
### NO. D-1-GN-07-002010, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This is an appeal from a final summary judgment declaring that Mark Smith d/b/a Design Center take nothing by his claims against Autodesk, Inc. and Christopher S. Canada Enterprises, Inc. d/b/a On-Site Computer Solutions ("On-Site") for failing to properly diagnose and remedy technical problems with his computer software and system. We will affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

Design Center is an interior-design business in Austin, Texas. On April 2, 2007, Design Center contacted On-Site, an information-technology service provider, to change Design Center's computer passwords in advance of Smith's plan to terminate the employment of Kevin Knippa, Design Center's in-house computer-networking consultant. On-Site responded to

the service request the same day and changed the passwords to help prevent Knippa from gaining access to Design Center's computer system. Before responding to the service call, however, On-Site confirmed the nature of the service request via an email response to Design Center, which Knippa saw the evening before his employment was terminated on April 3, 2007.[1]

After Knippa's termination, On-Site provided information technology consulting services to Design Center on an on-call basis and began assisting Smith and Design Center with computer networking problems they were experiencing, as well as problems using their AutoCAD software; it is undisputed that Design Center's AutoCAD issues predated On-Site's initial engagement on April 2, 2007.[2] In order to solve the problems Smith and Design Center were having with the AutoCAD software, Design Center employed On-Site to coordinate the communications

---

[1] A computer-generated email confirming the service request was automatically sent to a Design Center general email address and summarized the service request as follows:

> We received your request for support and understand its urgency.
>
> On-Site strives to address all requests in a timely manner. An On-site Consultant will contact you shortly to confirm the status and schedule for resolution.
>
> . . . .
>
> Amber emailed:
> Please call him [Smith] asap. He is letting go of his employee that has currently been helping/maintaining his network. He wants us to come in and change all passwords, setup security, etc.. [sic] again like we had it before. He doesn't mind paying after hour's rate [sic]. Old client that we haven't done anything for since Brian W.

Knippa stated in an affidavit that he had read the email the afternoon before his employment was terminated.

[2] AutoCAD is a computer-assisted drafting and design software program with multiple applications. It was used by Smith and Design Center for building and interior design.

2

among Design Center, Autodesk (the software publisher and licensor), and D.C. Cadd Company (the software distributor). Smith testified that Design Center engaged On-Site merely to act as a liaison with these companies and expected the software publisher or distributor to solve the problems with AutoCAD. Autodesk provided remote troubleshooting in response to Design Center's web-based and telephone support requests.

Design Center used On-Site's services until June 3, 2007; thereafter, Brian Wachhaus was hired to replace On-Site. At that time, the AutoCAD software was still not working to Smith's satisfaction, and Wachhaus continued to work with Autodesk and D.C. Cadd Company to resolve the issues via remote troubleshooting. It took an additional two months before the problem was resolved to Smith's satisfaction. Wachhaus eventually concluded that a computer virus or worm probably caused the AutoCAD problems.[3]

Meanwhile, in July 2007, Smith sued Knippa, alleging that he had misappropriated or destroyed Design Center's confidential and trade-secret information and improperly accessed and tampered with Design Center's AutoCAD system. Smith later added claims against Autodesk, D.C. Cadd, and On-Site for negligence and breach of fiduciary duty and against Autodesk and D.C. Cadd for deceptive trade practices. *See generally* Tex. Bus. & Com. Code Ann. §§ 17.01–.926 (West 2011 & Supp. 2012) ("DTPA"). Smith asserted that Autodesk, D.C. Cadd, and On-Site (1) failed to protect Design Center's confidential and trade-secret information, (2) misrepresented their qualifications to identify and remedy Design Center's computer-software problems, (3) falsely

---

[3] Wachhaus's conclusion could not be independently verified because he erased the affected computer's hard drive, at Smith's direction, after the underlying lawsuit was filed.

asserted that they had corrected the computer-software problems, and (4) failed to remedy the problems, all of which resulted in unreasonable delays for Smith's business operations. Smith further complained that On-Site negligently transmitted the email that alerted Knippa of his imminent termination, which provided Knippa with an opportunity to sabotage Design Center's computer system, destroy documents, and misappropriate confidential and trade-secret information. Smith claimed damages of $30,000 in fees he paid to Wachhaus to remedy his computer software problems and $160,000 in fees he had to refund to his clients to settle their claims against him, which allegedly resulted from delays caused by the defendants' tortious conduct. He later reduced his lost business damages claims to $115,000 after admitting that one of his clients had fired him several months before the events giving rise to this lawsuit occurred.

Both Autodesk and On-Site moved for summary judgment on all of Smith's claims and filed numerous objections to Smith's summary-judgment evidence. The trial court granted both motions without stating the grounds for its decision and without expressly ruling on the objections. Nearly three months later, the trial court signed an order granting all of Autodesk's objections to Smith's summary judgment evidence. However, there is no indication in the record that the trial court ever ruled on On-Site's objections.

The claims against the remaining defendants—Knippa and D.C. Cadd—proceeded to a jury trial, with the exception of Smith's claim that Knippa tampered with his computer system, which was apparently abandoned after both Smith and Wachhaus conceded that there was no evidence that Knippa had done so. The jury found against Smith on all claims. Specifically, the jury determined that (1) Knippa had not stolen Smith's or Design Center's trade secrets, (2) D.C. Cadd

4

had not engaged in deceptive or unconscionable trade practices, and (3) Smith, but not D.C. Cadd, was negligent in causing Smith's damages. Following the jury's verdict, the trial court rendered final judgment in the case, making the prior summary judgments final for purposes of appeal.

On appeal, Smith does not challenge the disposition of the claims against Knippa and D.C. Cadd, nor does he complain about the summary judgment on his breach-of-fiduciary-duty claims against Autodesk and On-Site. The only claims at issue here are the negligence and DTPA claims against Autodesk and the negligence claim against On-Site, which are based on the alleged failure to properly identify and remedy the problems with the AutoCAD software and the inadvertent disclosure of Smith's plans to terminate Knippa's employment.[4] Smith also contends that we must disregard On-Site's objections to his summary-judgment evidence because On-Site failed to secure a ruling on the objections. Smith further contends that the trial court's order granting Autodesk's objections is invalid because the court was required to rule on the objections when it granted the summary-judgment motion.

## DISCUSSION

We review the trial court's summary-judgment rulings de novo, viewing the evidence and reasonable inferences in the light most favorable to the non-movant. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When, as here, multiple grounds are asserted in a summary-judgment motion

---

[4] We might be inclined to conclude that Smith's DTPA claim is waived based on inadequate briefing, because it is mentioned in only a single sentence of the brief. *See* Tex. R. App. P. 38.1. We need not do so, however, because there are other grounds on which to affirm the judgment in Autodesk's favor.

and the summary-judgment order does not specify a ground for the court's rulings, the appellant must show on appeal that each independent ground alleged is insufficient to support summary judgment. *See Pickett v. Texas Mut. Ins. Co.*, 239 S.W.3d 826, 840 (Tex. App.—Austin 2007, no pet.) ("When the trial court does not specify the basis for its summary judgment, the appealing party must show it is error to base it on any ground asserted in the motion."); *cf. Nobility Homes, Inc. v. Shivers*, 557 S.W.2d 77, 83 (Tex. 1977) (holding that appellant's failure to challenge each separate and independent ground for recovery required affirmance of trial court's judgment). Therefore, we will affirm the summary judgments in this case if any ground presented in the summary-judgment motions is meritorious or is unchallenged on appeal. *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Hand v. Old Republic Nat'l Title Ins. Co.*, No. 02-10-00347-CV, 2011 WL 1103725, at *2 (Tex. App.—Fort Worth Mar. 24, 2011, no pet.) (mem. op.); *Pickett*, 239 S.W.3d at 840.

We begin by addressing the summary judgment in Autodesk's favor. Autodesk filed traditional and no-evidence motions for summary judgment, asserting a number of grounds, including challenges to the damage elements of Smith's claims. The damages Smith seeks in this case are consequential damages—sums he paid to his dissatisfied customers and sums he paid to Wachhaus for information technology services—which may be recoverable under both negligence and DTPA theories of liability. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 816 (Tex. 1997) (observing that consequential damages are recoverable as actual damages under common law and under DTPA and defining them as damages that "result naturally, but not necessarily from the defendant's wrongful acts"). Smith does not dispute that his only claimed

actual damages are consequential damages. Among other grounds, Autodesk sought summary judgment on the basis that consequential damages are not recoverable in this case because (1) they are barred by the express terms of his software-license and subscription agreements with Autodesk and (2) they were not a foreseeable result of Autodesk's allegedly wrongful conduct. *See id.* ("Under the common law, consequential damages need not be the usual result of the wrong, but must be foreseeable.") (citing *Mead v. Johnson Group, Inc.*, 615 S.W.2d 685, 687 (Tex. 1981)).

On appeal, Smith challenges the first ground, but not the second, asserting only that his claims are not subject to the terms and limitations in the software-license and subscription agreements. Smith's argument with regard to the applicability of his agreements with Autodesk does not necessarily or inferentially address the lack-of-forseeability ground, which is a separate and independent ground for summary judgment. *Cf. Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995) (appellant's argument that newspaper could still be liable for publishing lawfully obtained information was sufficient to address newspaper's claim that it could publish some facts with impunity simply because they were true). We therefore overrule Design Center's challenge to the trial court's summary judgment in Autodesk's favor without considering whether the trial court timely sustained Autodesk's objections to Smith's summary-judgment evidence. *See, e.g.*, *King v. Texas Emp'rs Ins. Ass'n*, 716 S.W.2d 181, 183 (Tex. App.—Fort Worth 1986, no writ) (affirming summary judgment because it "may have been granted, properly or improperly, on the ground set forth in the motion, and the granting of the summary judgment on that ground [was not] challenged by appellant" (citations omitted)).

7

With regard to the summary judgment in On-Site's favor, Smith asserts that summary judgment was not proper on its negligence claim because genuine issues of material fact exist as to each element of that claim. *See* Tex. R. Civ. P. 166a(c), (i) (summary judgment is proper if there is no genuine issue of material fact and movant is entitled to judgment as matter of law). Among other grounds, On-Site alleged that there was no evidence that it breached any duty owed to Smith or Design Center and no evidence of causation. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 246 (Tex. 2008) (negligence cause of action arises when breach of legal duty proximately causes damages). Viewing the evidence in the light most favorable to Smith and without regard to On-Site's objections to Smith's evidence, we agree that the evidence fails to raise a fact issue regarding essential elements of Smith's negligence claim.

Smith cites two circumstances underlying his negligence claim against On-Site. The first relates to the email On-Site sent to Design Center on April 2, 2007, that inadvertently disclosed Smith's intent to terminate Knippa's employment and which Smith alleges allowed Knippa to misappropriate trade secrets and tamper with Design Center's computers (if he were inclined to do so). However, there is no evidence that Knippa actually engaged in any such wrongful conduct. In addition, the undisputed evidence is that Design Center's AutoCAD problems predated the April 2 email. Simply stated, the record is devoid of any evidence that the April 2 email—even if sent negligently, which we do not decide—proximately caused the damages Smith seeks to recover in this lawsuit. Therefore, summary judgment was proper as to this claim.

The other alleged acts of negligence concern On-Site's role in attempting to remedy the problems with the AutoCAD software program. Smith testified that On-Site was engaged to act

8

as his liaison in communications with Autodesk and D.C. Cadd and that he expected those entities, not On-Site, to fix the problems with AutoCAD:

> Q. On-Site itself did not actually ever perform any of the work to try to fix the AutoCAD system that you were having—the problems with the system that you were having, correct?
>
> A. Correct, except what I had asked them to do and which they were trying to do was to help be a liaison for the whole.
>
> Q. Right, kind of coordinate your communications, the communications between yourself and Autodesk or [D.C. Cadd]?
>
> A. And the actions that everyone was taking. I wanted to make sure On-Site was in the loop since they were doing my networking.
>
> Q. Sure. But the entities that you actually understood at the time that were going to be fixing these problems with your AutoCAD system was either Autodesk or [D.C. Cadd], right?
>
> A. With Europe specifically? Yes.
>
> Q. With all the problems you were having during that two-month time period with the AutoCAD system?
>
> A. With AutoCAD, yes.

Invoices, summaries, and emails attached to Smith's affidavit and incorporated by reference are consistent with Smith's deposition testimony that On-Site's role with respect to the AutoCAD problems was limited to acting as a liaison or conduit for information between Smith or Design Center and Autodesk or D.C. Cadd. There is no evidence that On-Site breached its duties in that regard, and neither Smith nor Wachhaus could articulate what On-Site could or should have done differently. Because Smith failed to produce more than a scintilla of evidence that On-Site breached

9

a duty owed to Smith or Design Center, the trial court did not err in granting summary judgment in On-Site's favor.

**CONCLUSION**

For the reasons stated, we affirm the trial court's summary judgments in favor of Autodesk and On-Site.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Pemberton and Rose

Affirmed

Filed:   August 16, 2012

10