Affirmed in Part; Reversed and Remanded in Part; and Opinion filed
August 27, 2008








Affirmed in Part; Reversed and Remanded in Part; and Opinion filed August 27,
2008.

 

 

In The

 

Fourteenth Court of
Appeals

_______________

 

NO. 14-07-00103-CV

_______________

 

SONIC SYSTEMS INTERNATIONAL, INC., Appellant

 

V.

 

 

RANDY CROIX, EDDIE CROIX INSURANCE AGENCY, INC., AND
TEXAS MUTUAL INSURANCE COMPANY F/K/A TEXAS WORKER=S COMPENSATION INSURANCE FUND, Appellee

                                                                                                                                               


On Appeal from the 157th District Court

Harris County, Texas

Trial Court Cause No. 1999-09637

                                                                                                                                               


 

O P I N I O N








Appellant,
Sonic Systems International, Inc. (ASonic@), sued appellee, Texas Mutual
Insurance Company f/k/a Texas Worker=s Compensation Insurance Fund (ATMI@), based on TMI=s denial of insurance coverage
relative to a work-related injury sustained by a Sonic employee.  Sonic also
sued appellees, Randy Croix and Eddie Croix Insurance Agency, Inc.
(collectively Athe Croix Parties@), based on their alleged failure to properly procure
insurance to cover the employee=s claims.  The trial court granted separate motions for
summary judgment filed by TMI and the Croix Parties.  The trial court rendered
a final judgment that Sonic take nothing from all appellees.  Sonic presents
four appellate issues, challenging both summary judgments.

We
reverse the portions of the judgment ordering that Sonic take nothing on all
its contractual and extra-contractual causes of action against TMI to the
extent they are based on TMI=s denial of the claim for Texas workers= compensation benefits at issue in
this suit.  We affirm the portions of the judgment ordering that Sonic take
nothing on all its contractual and extra-contractual causes of action to the
extent they are not based on TMI=s denial of the Texas workers= compensation claim.  We affirm the
summary judgment on Sonic=s request for declaratory relief.  We affirm the judgment in
favor of the Croix Parties.

I.  Background

The
history of this suit is somewhat convoluted, but the pleadings and undisputed
summary judgment evidence establish the following pertinent background.

A.        Sonic=s Policy

  Sonic
performs testing in the nuclear and petro-chemical industries.  TMI issued a AWorkers= Compensation And Employers Liability
Insurance Policy@ (Athe policy@) to Sonic, effective March 2, 1996 to March 2, 1997.  The
Croix Parties were the agents who procured the policy on Sonic=s behalf.  The policy provided that
TMI would promptly pay when due the benefits required of Sonic by Texas workers= compensation law.  The policy also
included an AOther States Endorsement,@ requiring TMI to reimburse Sonic for amounts it was required
to pay as benefits by the workers= compensation laws of certain other
states, including Alabama.  The endorsement applied to Atemporary operations only,@ which, by definition, excluded
operations performed by Sonic Aat or from a permanent location@ or Aunder contract except for contract
trucking.@

 








B.        Cochran=s Injury and Texas Workers= Compensation Claim

On
February 24, 1997, Sonic was performing services at a nuclear plant in Alabama
pursuant to a contract with Southern Nuclear Operating Services.  Gary Cochran,
a Sonic employee and Alabama resident, injured his back while working at the
plant.  Sonic reported Cochran=s injury to the Texas Worker=s Compensation Commission (ATWCC@).

In July
1997, Cochran filed a claim for benefits under the Texas Workers= Compensation act (Athe Texas act@).  TMI disputed Cochran=s claim for two reasons: (1) Cochran
was an independent contractorCnot an employee of SonicCat the time of his injury; and (2)
Cochran did not satisfy the statutory provision prescribing the circumstances
under which an employee injured while working in another jurisdiction is
entitled to rights and remedies under the act.[1] 
At that point, neither Cochran nor Sonic pursued Cochran=s claim through the administrative
process prescribed by the act.[2]  Several
months later, Sonic began making voluntary compensation payments to Cochran.

C.        The Underlying Suit








Then, in
1999, Sonic filed the suit underlying this appeal.[3] 
Sonic has amended its petition several times, and we will later outline its
causes of action in more detail.  In essence, Sonic=s causes of action against TMI rest
on its acts relative to acquisition and underwriting of the policy and its
refusal to provide coverage for claims arising from Cochran=s injury.  Sonic=s complaints against the Croix
Parties center on their alleged failure to procure workers= compensation coverage for Sonic=s out-of-state employees, including
Cochran. 

D.        Cochran=s Alabama Claim

In the
same year, Cochran pursued a claim under the Alabama workers= compensation act (Athe Alabama act@).  According to Cochran, he filed
the Alabama claim because TMI had disputed his Texas claim and the Alabama
statute of limitations would shortly expire.  Sonic did not have Alabama
workers= compensation insurance.  In July
2001, an Alabama court rendered judgment against Sonic, awarding Cochran income
and medical benefits.[4]  TMI has
refused to reimburse Sonic under the Other States Endorsement for the Alabama
judgment, contending that Sonic=s project at issue was excluded from the definition of Atemporary operations.@ 

E.        Sonic=s Return to the TWCC

Several
days after the Alabama court rendered judgment, Sonic returned to the TWCC.  As
a subclaimant, Sonic sought reimbursement from TMI for benefits Sonic
voluntarily paid to Cochran.[5]








After a
contested case hearing, the TWCC hearing officer determined in pertinent part:
(1)  Cochran was an employee of Sonic, sustained a compensable injury while
working in Alabama, and was entitled to all rights and remedies under the Texas
act; (2) however, pursuant to section 406.075(a) of the act, Cochran was barred
from recovering Texas benefits because he elected to pursue a remedy and
recover workers= compensation benefits under Alabama law; see Tex.
Lab. Code Ann. ' 406.075(a) (Vernon 2006) (providing, AAn injured employee who elects to
pursue the employee=s remedy under the workers= compensation laws of another
jurisdiction and who recovers benefits under those laws may not recover under
this subtitle.@); and (3) Sonic, as Cochran=s subclaimant, was likewise precluded
from reimbursement of benefits voluntarily paid to Cochran.

Only
Sonic challenged the hearing officer=s decision to a TWCC appeals panel. 
Sonic appealed the hearing officer=s determination that Cochran was
barred from recovering Texas benefits by his election of Alabama remedies and
thus Sonic was not entitled to reimbursement of benefits voluntarily paid to
Cochran.  The appeals panel affirmed the hearing officer=s decision.[6]

F.        Sonic=s Judicial Review Case

Sonic
filed a petition for judicial review of the TWCC appeals panel decision.  The
judicial review case and underlying suit were consolidated in the trial court. 
At TMI=s request, the trial court abated the
underlying suit pending resolution of the judicial review case.  Sonic and TMI
filed cross-motions for summary judgment in the judicial review case.  The
trial court granted Sonic=s motion and denied TMI=s motion.  The trial court reversed
the appeals panel=s decision that Sonic was not entitled to reimbursement for voluntary
payments because Cochran made an election of remedies.  The trial court awarded
$78,023.89 to Sonic.  Despite Sonic=s request, the trial court refused to
lift the order abating the underlying suit.








TMI
appealed the trial court=s summary judgment to our court.  Sonic also filed a mandamus
petition in our court, seeking to compel the trial court to lift its abatement
order.  We consolidated the appeal and mandamus petition.  See Tex.
Mut. Ins. Co. v. Sonic Sys. Int=l, Inc., 214 S.W.3d 469, 471 (Tex. App.CHouston [14th Dist.] 2006, pet.
denied).  

With
respect to TMI=s appeal, we reversed the summary judgment and reinstated the decision of
the TWCC appeals panel.  Id. at 478.  Subsequently, the Texas Supreme
Court denied Sonic=s petition for review.  Therefore, TWCC=s determinations that Cochran was
barred from recovering benefits by his election of remedies and Sonic was
barred from obtaining reimbursement of its voluntary payments are now final. 
Relative to Sonic=s mandamus petition, we held that the trial court abused its
discretion by continuing to abate the underlying suit and conditionally granted
mandamus relief.  Id. at 482.

G.        Resolution of the
Underlying Suit in the Trial Court

With the
abatement order lifted, prosecution of the underlying suit proceeded in the
trial court.  The Croix Parties filed a motion for summary judgment, and TMI
filed an amended motion for summary judgment.  On October 13, 2006, the trial
court signed separate orders granting both motions.  On November 7, 2006, the
trial court signed a final judgment incorporating its orders on the motions for
summary judgment and ruling that Sonic take nothing on all its causes of action
against both appellees.

II.  Standard of Review








Both
appellees filed traditional motions for summary judgment.  A party moving for
traditional summary judgment must establish that no genuine issue of material
fact exists and it is entitled to judgment as a matter of law.  See Tex.
R. Civ. P. 166a(c);  Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215B16 (Tex. 2003).  Specifically, a defendant moving for summary
judgment must conclusively negate at least one essential element of each of the
plaintiff=s causes of action or conclusively establish each element of an
affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941 S.W.2d 910,
911 (Tex. 1997);  Lundstrom v. United Servs. Auto. Ass=n‑CIC, 192 S.W.3d 78, 84 (Tex. App.CHouston [14th Dist.] 2006, pet.
denied).  If the movant facially establishes its right to summary judgment, the
burden shifts to the non-movant to raise a genuine issue of material fact
sufficient to defeat summary judgment.  See Centeq Realty, Inc. v. Siegler,
899 S.W.2d 195, 197 (Tex. 1995); Lundstrom, 192 S.W.3d at 84.  We review
a summary judgment de novo.  Knott, 128 S.W.3d at 215.  We take all
evidence favorable to the nonmovant as true and indulge every reasonable
inference and resolve any doubts in favor of the nonmovant.  Id.

III.  Summary Judgment in Favor of TMI

We will
first address Sonic=s third and fourth issues, regarding the summary judgment in
favor of TMI.  Preliminarily, to define the issues on appeal, we will outline
Sonic=s causes of action, TMI=s summary-judgment grounds, and the
extent to which Sonic challenges the summary judgment.

A.        Sonic=s Causes of Action








In its
live petition, Sonic asserted the following causes of action against TMI: 
negligence;[7] gross
negligence; breach of contract;[8] breach of the
duty of good faith and fair dealing;[9] request for
declaratory relief;[10] violations
of Texas Insurance Code Chapter 541 (prohibiting unfair or deceptive acts and
practices in the insurance business);[11] violations
of Texas Insurance Code Chapter 542, Subchapter B (governing prompt payment of
claims);[12] and
violations of the DTPA (prohibiting deceptive acts or practices in any trade or
commerce).[13]








Sonic
pleaded that its damages caused by TMI=s actions included, but were not
limited to, the following: attorneys= fees incurred by Sonic in connection
with Cochran=s Texas and Alabama workers= compensation claims; the amount of
the Alabama judgment; medical and compensation benefits paid to Cochran; loss
of profits from Sonic=s inability to develop business due to  financial hardship
resulting from Cochran=s claims; punitive damages; and attorneys= fees to prosecute this suit.

B.        TMI=s Summary-Judgment Grounds

TMI
moved for summary judgment on all Sonic=s causes of action.  In the motion,
TMI suggested that all Sonic=s causes of action, except its request for declaratory
relief, were based on two underlying acts: (1) TMI=s denial of Cochran=s Texas workers= compensation claim; and (2) TMI=s refusal to reimburse Sonic under
the Other States Endorsement for benefits it was required to pay pursuant to
the Alabama act.  As TMI suggested, these alleged obligations to provide
coverage arose from independent portions of the policy: Cochran=s Texas claim was purportedly covered
by the Texas workers= compensation portion of the policy, whereas the judgment
rendered against Sonic pursuant to the Alabama act was purportedly covered
under the Other States Endorsement.

TMI
presented two individual arguments in accordance with these independent
portions of the policy.  First, as we will later discuss in more detail, TMI
argued that, to the extent Sonic=s contractual and extra-contractual
causes of action are based on TMI=s denial of Cochran=s Texas workers= compensation claim, they are
precluded by American Motorists Insurance Co. v. Fodge, 63 S.W.3d 801
(Tex. 2001).

Second,
TMI challenged Sonic=s  contractual and extra-contractual causes of action to the
extent they were based on TMI=s refusal to reimburse Sonic under the Other States
Endorsement for benefits it was required to pay pursuant to the Alabama act.[14]








Finally,
TMI separately attacked Sonic=s request for a declaratory judgment that Cochran was
entitled to all rights and remedies under the Texas act and there was coverage
for his claim under the policy.  TMI argued that the TWCC had exclusive
jurisdiction to make that determination and its decision that Cochran was
barred from recovering benefits by his election of remedies precluded the trial
court from granting the requested relief. 

C.        Sonic=s Appellate Issues

On
appeal, Sonic assails only the portion of TMI=s motion for summary judgment
contending that Fodge precludes Sonic=s contractual and extra-contractual
causes of action to the extent they are based on TMI=s denial of Cochran=s Texas workers= compensation claim.

Sonic
presents no argument attacking the portion of TMI=s motion challenging Sonic=s contractual and extra-contractual
causes of action to the extent they are based on TMI=s refusal to reimburse Sonic for
benefits it was required to pay under the Alabama act.  See Tex. R. App.
P. 38.1(h) (providing appellant=s brief must contain a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record);
San Saba Energy, L.P. v. Crawford, 171 S.W.3d 323, 337 (Tex. App.CHouston [14th Dist.] 2005, no pet.)
(recognizing appellant must present some specific argument and analysis to
attack summary-judgment ground).








Moreover,
Sonic does not controvert TMI=s suggestion that all contractual and extra-contractual
causes of action are based on TMI=s denial of Cochran=s Texas claim or refusal to reimburse
Sonic for benefits it was required to pay under the Alabama act.  Therefore,
Sonic does not contend that the trial court granted more relief than requested
in TMI=s motion for summary judgment.  See
Beathard Joint Venture v. W. Houston Airport Corp., 72 S.W.3d 426, 436
(Tex. App.C Texarkana 2002, no pet.) (recognizing appellant must raise issue on appeal
that more relief than requested in motion was improperly granted in summary
judgment order); Toonen v. United Servs. Auto. Ass=n., 935 S.W.2d 937, 942 (Tex. App.CSan Antonio 1996, no writ) (same).

Finally,
Sonic presents no argument attacking summary judgment on Sonic=s request for declaratory relief.  

Accordingly,
we will address solely whether TMI established it was entitled to summary
judgment on its Fodge ground. 

D.        TMI=s Fodge Argument 

Relying
entirely on Fodge, TMI asserted that Sonic is precluded from recovering
damages based on TMI=s denial of Cochran=s workers= compensation claim under the Texas
act because the TWCC determined Cochran was barred from recovering Texas
benefits by his election of Alabama remedies.

In Fodge,
an employee filed a claim for Texas workers= compensation benefits.  63 S.W.3d.
at 802.  The carrier denied the claim.  Id.  A TWCC hearing officer
found that the employee had suffered a compensable injury and ordered payment
of temporary income benefits.  Id.   In the TWCC proceeding, the
employee never sought medical benefits.  Id.  Neither the employee nor
the carrier appealed the hearing officer=s decision.  Id.  The employee
subsequently sued the carrier for breach of the duty of good faith and fair
dealing, negligence, fraud, violations of the DTPA, and violations of the Texas
Insurance Code.  Id. at 802B03.  The trial court granted the
carrier=s plea to the jurisdiction and
dismissed the case.  Id. at 803.  Ultimately, the Texas Supreme  Court
affirmed in part and reversed and remanded in part.  See id. at
804B05.








The
court noted that the employee essentially asserted three claims, seeking the
following damages: (1) additional income and medical benefits not addressed by
the TWCC; (2) damages caused by the carrier=s alleged bad-faith denial of those
benefits; and (3) damages caused by the carrier=s alleged bad-faith delay in paying
temporary income benefits awarded by the TWCC.  See id. at 803.[15]

The
court first recognized that the act vested the TWCC with sole power to award
compensation benefits, subject to judicial review.  Id.  Further, the
TWCC had jurisdiction of disputes over income benefits, preauthorization of
medical care, and reimbursement of medical expenses.  Id.  The court then
stated:

Because only the [TWCC] can determine a claimant=s entitlement to compensation
benefits, . . . A[a]llowing courts to award damages for wrongful deprivation
of benefits would circumvent the Commission=s jurisdiction@ and therefore could not be
permitted.  Thus, just as a court cannot award compensation benefits, except on
appeal from a [TWCC] ruling, neither can it award damages for a denial in
payment of compensation benefits without a determination by the [TWCC] that
such benefits were due. 

Id. at 804 (emphasis added) (citations
omitted).  








Applying
this principle, in the holding pertinent to TMI=s present argument, the court
concluded that the trial court lacked jurisdiction over the employee=s claim for damages allegedly caused
by the carrier=s denial of additional income and medical benefits.  Id. at 804B05.  Because the TWCC had not
determined that any additional income or medical benefits were due, the trial
court lacked jurisdiction to adjudicate the employee=s claim even if presented under
theories of negligence, fraud, and statutory violations.  Id.  However,
the court reasoned that abatement, not dismissal, was appropriate on this
claim.  Id. at 805.  The court could not discern whether the time for
the employee to seek such benefits in the TWCC had expired.  Id.  But,
the court stated that, if the time to seek those benefits had expired, the
employee=s claim for damages would no longer
be viable and should be dismissed.  Id.[16]

As TMI
asserts, the TWCC determined that Cochran, and Sonic as subclaimant, were
barred from recovering workers= compensation benefits due to Cochran=s election of remedies.  Further,
this determination was affirmed through the judicial review process.  Thus,
citing the above-quoted language, TMI contends a court may not award damages to
Sonic resulting from TMI=s denial of Cochran=s workers= compensation claim under the Texas
act.

E.        Sonic=s Arguments Regarding Fodge

Sonic
presents two interrelated issues attacking TMI=s Fodge ground.  In its third
issue, Sonic posits that the trial court misinterpreted and improperly applied Fodge
because: (1) Fodge involved only jurisdictional issues; (2) the Fodge
court addressed only an employee=s claims against a carrier based on
the act; in contrast, the present suit concerns Sonic=s rights, as employer/insured,
against its carrier, based on contract and tort law; and (3) unlike the Fodge
employee, Sonic obtained a TWCC ruling that Cochran was entitled to rights and
remedies under the act.








             In its
fourth issue, Sonic contends that TMI=s reliance on Fodge was
precluded by the doctrine of res judicata. According to Sonic, TMI is
attempting to relitigate the issue of coverage for Cochran=s workers= compensation claim, which has been
resolved through the process prescribed by the Texas act.[17] 
As Cochran asserts, TMI did not appeal the TWCC=s determination that Cochran was
entitled to rights and remedies under the Texas act.  See Tex. Lab. Code
Ann. ' 410.169 (providing that decision of
hearing officer regarding benefits is final absent timely appeal by a party). 

However,
TMI does not attempt to relitigate this determination.  Rather, TMI contends
the controlling portion of the TWCC=s ruling, for purposes of Fodge,
is the ultimate decision that Cochran was barred from recovering benefits to
which he was otherwise entitled because he made an election of remedies. 
Therefore, Sonic=s Ares judicata@ contention is actually a complaint that TMI focuses on the
wrong portion of the TWCC ruling when relying on Fodge.  As Sonic notes,
the Fodge employee could not prosecute a claim based on the carrier=s refusal to pay certain benefits
when the TWCC had never considered whether benefits were due.  See Fodge,
63 S.W.3d at 804B05.  However, as Sonic also suggests, the Fodge court
did not address the present situation, in which the TWCC determined that an
employee sustained a compensable injury and was entitled to rights and remedies
under the act, yet he was barred from recovering benefits based on his election
of remedies. See id. Similar to its third issue, Sonic suggests
that the operative TWCC ruling is the determination that Cochran was entitled
to rights and remedies under the Texas act.  Therefore, Sonic argues that Fodge
does not preclude Sonic=s causes of action based on denial of Cochran=s workers= compensation claim under the Texas
act.

F.        Analysis








Initially,
we reject some of Sonic=s arguments regarding the import of Fodge.  First, we
disagree with Sonic=s contention that Fodge is pertinent only to
jurisdictional issues.  The court directly addressed the trial court=s jurisdiction; however, the court
suggested that an employee lacks a viable cause of action for damages stemming
from refusal to pay workers= compensation benefits absent the TWCC=s determination that such benefits
were due.  See Fodge, 63 S.W.3d at 804B05.

We also
reject Sonic=s suggestion that Fodge involved an employee=s claims against a carrier based
solely on the Texas act and thus is not controlling when an employer/insured
asserts contract and tort claims against a carrier for denial of an employee=s claim.  As we have explained, the Fodge
claimant did not merely seek benefits under the Texas act; rather, she also
asserted tort and statutory claims against the carrier based on its failure to
pay benefits allegedly due.  See id. at 803B05; Pickett v. Tex. Mut. Ins. Co.,
239 S.W.3d 826, 835B36 (Tex. App.CAustin 2007, no pet.) (recognizing Fodge applies
whenever the plaintiff=s claims, even if tort or statutory, are based on carrier=s denial of benefits).  Moreover,
when applicable, Fodge would preclude a cause of action  whether the
plaintiff is the employee or employer.  Their causes of action would obviously
be based on the same denial of benefits, and pertinent TWCC determinations
would be binding on the employee and employer.  See In re Tex. Mut. Ins. Co.,
157 S.W.3d 75, 77B82 (Tex. App.CAustin 2004, orig. proceeding) (applying Fodge when
employer=s assignee sued carrier for breach of
contract and negligence based on lack of coverage for employee=s workers= compensation claim).








Despite
our rejection of these arguments, we are bound by this court=s previous opinion in Sonic I to
conclude that Fodge does not preclude Sonic=s contractual and extra-contractual
causes of action to the extent they are based on denial of Cochran=s claim for Texas workers= compensation benefits.  Sonic
Sys. Int=l, 214 S.W.3d at 478B82.[18]  In addition
to TMI=s appeal in the judicial review case,
this court also considered Sonic=s mandamus petition complaining of
the trial court=s refusal to lift abatement of the present suit.  See id. 
Citing Fodge, TMI maintained that the trial court was required to abate
Sonic=s causes of action based on denial of
Cochran=s workers= compensation claim pending final
resolution of the judicial review case.  See id. at 480.  TMI
argued that, if the workers= compensation claim was barred due to Cochran=s election of remedies, the present
suit would also be barred; thus, resolution of the workers= compensation claim was prerequisite
to disposition of the present suit.  Id. at 481.

However,
this court rejected TMI=s argument.  See id. at 481B82. Significantly, this court
recognized:

Sonic=s causes of action are similar to those asserted in Fodge. 
However, in this case, the issues within the exclusive jurisdiction of the TWCC
that are possibly relevant to Sonic=s
contract claims have been finally determined - - that is, Cochran was Sonic=s employee at the time he suffered the compensable
injury . . . and the issues involved in the judicial review case -- Cochran=s election of remedies and Sonic=s reimbursement claim -- are discrete matters from
those raised by Sonic=s contract claims. . . . 

While Sonic=s [contract claims] might be barred
if it was determined that Cochran was not Sonic=s employee or he did not suffer a
compensable injury, those issues have been finally determined. . . . Here,
Sonic=s contract claims do not depend on
the final determination of Cochran=s election of remedies . . . or Sonic=s right to reimbursement. . . .

However, at this point in the proceedings, the issues
to be finally determined in the judicial review case are not determinative of
Sonic=s contract claims, and continued
abatement of the contract claims does not serve concerns raised in Fodge
. . . . Therefore, we conclude the trial court=s . . . orders of abatement are an
abuse of discretion.

Id. at 481B82.








TMI now
urges that this court made the above-quoted pronouncement solely because Sonic
also asserted causes of action in this suit based on denial of coverage for the
Alabama judgment under the Other States Endorsement, which are independent of
any TWCC determinations.  Indeed, in a footnote, this court suggested that the
pending causes of action also related to denial of coverage under the Other
States Endorsement.  See id. n.19.  However, this court did not
state that abatement should be lifted because the only viable causes of
action after the TWCC=s rulings related to denial of coverage under the Other
States Endorsement.  See id. at 481B82.  To the contrary, this court
emphasized that the only TWCC determination possibly relevant to Sonic=s causes of action in this suit was
the ruling that Cochran was Sonic=s employee and suffered a compensable
injury.  See id.  Clearly, this determination was relevant to
causes of action based on TMI=s denial of Cochran=s Texas workers= compensation claimCnot causes of action based on TMI=s refusal to reimburse Sonic under
the Other States Endorsement for benefits it was required to pay pursuant to
the Alabama act.

Consequently,
this court concluded that, in light of this determination, Sonic was allowed to
prosecute its causes of action based on denial of Cochran=s Texas claim.  See id.
at 481B82.  Moreover, this court held, even
if the TWCC=s ruling that Cochran was barred from recovering Texas benefits by his
election of remedies were affirmed, Fodge would not preclude Sonic=s causes of action in this suit.  See
id.  Accordingly, we held that the trial court abused its discretion by
abating the causes of action in this suit.  See id.  If the
causes of action were precluded by the TWCC=s ruling that recovery of benefits
was barred by the election of remedies, then continued abatement would have
been appropriate until that issue was finally resolved though the judicial
review case.

Thus, to
the extent that Sonic seeks damages based on TMI=s denial of Cochran=s Texas workers= compensation claim, we are bound by
our previous holding to conclude that Sonic=s causes of action are not precluded
by Fodge.  Accordingly, the trial court erred by granting summary
judgment on this ground.  We sustain Sonic=s third and fourth issues.

IV.  Summary Judgment in Favor of the Croix Parties








Next, we
address Sonic=s first and second issues, assailing the summary judgment in favor of the
Croix Parties.  Sonic sued the Croix Parties for negligence, gross negligence,
violations of Chapters 541 and 542 of the Texas Insurance Code, and DTPA
violations.  In its brief, Sonic specifically asserts that it challenges
summary judgment on the causes of action for negligence, gross negligence, and
DTPA violations.  Sonic alleged the same DTPA and Chapter 541 claims against
the Croix Parties that it presented against TMI.  Thus, we liberally construe
the brief as also challenging summary judgment on the Chapter 541 claim.  Sonic
does not appeal summary judgment on its Chapter 542 claim.  Therefore, we must
affirm summary judgment on that claim.[19]

The
Croix Parties presented separate summary-judgment grounds challenging the
causes of action for (1) negligence, (2) gross negligence, and (3) Chapter 541
and DTPA violations.  Further, the Croix Parties asserted that all Sonic=s causes of action were barred by Fodge. 
In its first appellate issue, Sonic contends the trial court erred by granting
summary judgment on the grounds presented to challenge each cause of action. 
In its second issue, Sonic asserts the trial court erred if it granted summary
judgment based on Fodge.  Because the trial court did not specify the
ground on which summary judgment was granted on each cause of action, we will
affirm the judgment if any theory advanced in the motion is meritorious.  See
Zarzana v. Ashley, 218 S.W.3d 152, 157 (Tex. App.CHouston [14th Dist.] 2007, pet.
struck) (citing Joe v. Two Thirty Nine Joint Venture, 145 S.W.3d 150,
157 (Tex. 2004)).  We conclude the trial court properly granted summary judgment
on the separate grounds presented to challenge each cause of action.

A.        Negligence








The
elements of a negligence claims are (1) legal duty owed by one person to
another,  (2) breach of that duty,  and (3) damages proximately caused by the
breach.  D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002).  The
Croix Parties moved for summary judgment on the grounds that they did not
breach a duty to Sonic, and, alternatively, Sonic did not sustain damages
proximately caused by any breach.

An
insurance agent owes the following common-law duties to a client for whom the
agent undertakes to procure insurance: (1) to use reasonable diligence in
attempting to place the requested insurance; and (2) to inform the client
promptly if unable to do so.  May v. United Servs. Ass=n of Am., 844 S.W.2d 666, 669 (Tex. 1992); Critchfield
v. Smith, 151 S.W.3d 225, 230 (Tex. App.CTyler 2004, pet. denied); Moore v.
Whitney‑Vaky Ins. Agency, 966 S.W.2d 690, 692 (Tex. App.CSan Antonio 1998, no pet.).

Sonic
pleaded that the Croix Parties breached this duty by: 

1.         failing to properly solicit workers= compensation insurance for Sonic=s employees who lived and worked out of state;

2.         failing to properly solicit workers= compensation insurance for Sonic; and

3.         improperly placing Sonic=s request for workers= compensation insurance with TMI.

In their
motion for summary judgment, the Croix Parties argued they did not breach their
duty because they obtained the insurance requested by Sonic.

1.         Summary
Judgment Evidence

We will
first review the summary-judgment evidence regarding the insurance  requested
by Sonic.  The undisputed evidence demonstrated that the Croix Parties first
obtained a Texas workers= compensation and employer liability policy on Sonic=s behalf in early 1994, and it was
subsequently renewed for several policy periods.








To
support their motion for summary judgment, the Croix Parties presented, inter
alia, Randy Croix=s affidavit and excerpts from his deposition, excerpts from
the deposition of Nita Harrivel, a Sonic accountant primarily responsible for
communications with Croix,[20] and several
letters between Sonic and Croix.

According
to Croix, when he and Sonic first discussed the possibility of his obtaining workers= compensation insurance on Sonic=s behalf, he inquired about
out-of-state operations.  Sonic informed him that it used only Texas employees
who worked temporarily in other states.  In contrast, Harrivel testified that,
from the outset of the relationship, Sonic made clear it had employees who
lived and worked outside Texas.

On
February 10, 1994, Bill Aston, then-president of Sonic, wrote the following
letter to Croix:

Please be
advised that [Sonic] has entered into an agreement for services with Southern
Nuclear Operating Company.  These services will be performed at various
facilities in Alabama and Georgia and may be accomplished in part by
residents of multiple states, including Alabama and Georgia.  

Please find
the attached requirements for insurance as delineated in the Southern Nuclear
agreement. Please review and advise if [Sonic] should need any additional
coverage or special consideration for this project.

Also, please keep these requirements in mind when
placing our Worker=s Compensation coverage, realizing the out-of-state project
and employees.

(emphasis added).  On the
same day, Sonic sent Croix a substantially similar letter regarding a contract
for services in Louisiana to possibility be performed by Louisiana residents.

In
response, Croix sent  Sonic a letter dated February 22, 1994, which included
the reference line: AWorkers Compensation for LA, GA, AL.@  Croix wrote:

As
discussed, if you hire out-of-state employees, you must have coverage in those
states.  Texas employees are covered in most of the other states, but
please contact us when you go out of state to confirm coverage is in effect.








[providing
rates for coverage in these states]

If any of these policies are needed, please provide at
least 48 hours notice to process.  Please call if we can further assist.

(emphasis in original).

In his
affidavit, Croix averred that, three months later, Sonic contacted Croix
expressing its desire to purchase a Louisiana policy, which Croix arranged. 
However, Sonic never requested purchase of workers= compensation policies in Alabama or
Georgia.

On
February 10, 1995, Croix sent a letter to Harrival providing a quotation for
renewal of its Texas workers= compensation coverage for March 2, 1995 to March 2, 1996
(preceding the period for the policy at issue).  Croix stated,  AThis policy covers Texas Employees
only.  You also have a Louisiana policy.  If you have operations in other
states, please let us know so we can make application arrangements for you in
those states.@

In his
deposition, Croix confirmed he cautioned Sonic that there would not be coverage
if it had permanent operations outside Texas or employed residents of other
states.  However, Sonic instructed him to obtain insurance only for Texas
employees temporarily working out of state, except coverage for Louisiana
operations and an Alaska project (which had previously been placed).  Croix
further testified that, in February 1996 (when the policy was renewed for the
period at issue), he did not know whether Sonic had any operations or employees
in Alabama.

Additionally,
Harrivel testified that she was unaware of any communications between Sonic and
the Croix, except the February 10, 1994 letter, advising him regarding the
nature and extent of Sonic=s Alabama operations.  Further, Harrivel could not recall
Sonic=s informing Croix that Sonic had
actually hired Alabama residents.  Harrivel also explained that she did not
consider purchasing an Alabama policy; she believed an Alabama policy was
unnecessary because the project was not continuous or long-term, although it
was conducted off and on for nine years.








2.         Analysis

Preliminarily,
we note that Sonic primarily complains regarding the Croix Parties= actions with respect to procurement
of the Texas policy.  However, Sonic suggests the Croix Parties should have
also obtained an Alabama policy.  We conclude the summary-judgment evidence
negated a breach of duty under either scenario. 

a.         Texas Workers= Compensation Policy

Taking
all evidence favorable to Sonic as true and indulging every reasonable
inference and resolving any doubts in its favor, the evidence shows that Croix
was informed Sonic generally used non-Texas residents to perform work in other
states and may use Alabama residents to perform a specific contract in
Alabama.  However, except the Louisiana and Alaska situations, Sonic requested
that the Croix Parties obtain only a policy covering ATexas employees@ temporarily working in other states.

The
Croix Parties did not breach their duty because they satisfied Sonic=s request by securing a Texas workers= compensation policy.  Section
406.071 of the act dictates the circumstances under which an employee who is
injured while working in another state may recover Texas workers= compensation benefits:

(a) An
employee who is injured while working in another jurisdiction . . . is entitled
to all rights and remedies under this subtitle if:

(1) the injury would be compensable if it had occurred in this state; 
and

(2) the employee has significant contacts with this state or the
employment is principally located in this state.

(b) An
employee has significant contacts with this state if the employee was hired or
recruited in this state and the employee:

(1) was injured not later than one year after the date of hire;  or

(2) has worked in this state for at
least 10 working days during the 12 months preceding the date of injury.








Tex. Lab. Code Ann. ' 406.071.  The principal location of
a person=s employment is where: (1) the
employer has a place of business at or from which the employee regularly
works;  or (2) the employee resides and spends a substantial part of the
employee=s working time.  Tex. Lab. Code Ann. ' 406.072 (Vernon 2006).

The term
ATexas employees@ is somewhat vague.  Nevertheless, we
conclude the Croix Parties obtained coverage for ATexas employees@ injured while temporarily working in
other states because the policy covered (1) persons who regularly worked at or
from a Texas location; (2) Texas residents who spent a substantial part of
their working time in Texas; and (3) in some instances, even persons who did
not fit within the previous categories but had Asignificant contacts@ with Texas.  See id. '' 406.071, 406.072.

Importantly,
absent Cochran=s election of remedies, the policy would have provided coverage for
Cochran=s Texas workers= compensation claim although he did
not reside in Texas and apparently did not regularly work at or from a Texas
location.  The TWCC concluded Cochran had significant contacts with Texas
because he was hired in Texas and was injured within one year after the date of
hire.  See id. ' 406.071(b)(1).  Although the TWCC further determined Cochran
was barred from recovering Texas benefits because he elected a remedy under
Alabama law, the Croix Parties obtained a policy which would otherwise have
covered Cochran=s Texas claim.  Whether recovery would be barred by election
of remedies was beyond Croix=s control once it procured the policy.








In its
summary-judgment response and on appeal, Sonic acknowledges the Croix Parties secured
a policy that would have covered Cochran=s Texas claim if not for the election
of remedies.  Regardless, Sonic complains about the Croix Parties= actions with respect to procurement
of a Texas policy.  Apparently, the gist of Sonic=s complaint is that the Croix Parties
should have obtained some other Texas policy that more clearly demonstrated
coverage for Cochran=s.  Sonic suggests this alleged breach caused TMI to
initially dispute coverage for Cochran=s claim, which in turn resulted in
Sonic=s various damages.[21]

However,
we reject Sonic=s contention. Whether an employee may recover Texas workers= compensation benefits for an injury
sustained out of state is dictated by the actCnot the terms of the policy.  See
Tex. Lab. Code Ann. ' 406.071.  An employer purchases a workers= compensation policy to obtain
payment of benefits required by the act.  See Tex. Lab. Code Ann. ' 406.002 (Vernon 2006) (providing,
subject to certain exceptions, employer may elect to obtain workers= compensation coverage and employer
who so elects is subject to the act).  Accordingly, we reject the suggestion that
an agent is obligated to procure a workers= compensation policy that contains
language clearly defining eligibility for benefits that can be ascertained by
reviewing the statute.

Further,
Sonic cites no authority holding that an agent who obtained a  policy that
actually covered the underlying claim nonetheless breached his duty because the
insured incurred expenses or other damages resulting from the carrier=s denial of coverage.  It is
axiomatic an insurance policy does not include an inherent guarantee that the
carrier will never dispute coverage.  Whether TMI would dispute a workers= compensation claim was beyond the
Croix Parties= control once it procured the policy.  Accordingly, the Croix Parties did
not breach their duty to Sonic by failing to secure a different Texas workers= compensation policy.

 








b.         Alabama Workers= Compensation Policy

To
support its negligence claim, Sonic does not specifically mention the Croix
Parties= failure to secure an Alabama workers= compensation policy.  However, in
its petition, Sonic generally asserted the Croix Parties were negligent by
failing to secure proper workers= compensation coverage for employees
who lived and worked out of state.  Although Cochran was eligible to receive
Texas workers= compensation benefits, he was also entitled to recover Alabama workers= compensation benefits.  Apparently,
Sonic claims it was required to pay these benefits pursuant to the Alabama
judgment because it lacked Alabama workers= compensation insurance.  To the
extent Sonic complains the Croix Parties failed to secure an Alabama workers= compensation policy, the Croix
Parties negated that they breached a duty.[22]








The
Croix Parties= summary-judgment evidence established that Sonic did not request an
Alabama workers= compensation policy.   In its summary-judgment response and
appellate brief, Sonic cites its February 10, 1994 letter advising Croix
regarding the contract for the Alabama project at issue and the possibility of
using Alabama residents.  But, in response, Croix cautioned Sonic to obtain an
Alabama policy if it employed Alabama residents, provided quotes for such a
policy, and asked Sonic to inform him if it wished to purchase the policy. 
Despite this advice, Sonic never requested that Croix purchase such a policy. 
We note that the Croix Parties did not present any letter specifically advising
Sonic of the need to obtain an Alabama policy when it purchased the Texas
policy at issue.  However, when initially placing the insurance, Croix advised Sonic
of the need to purchase Alabama workers= compensation coverage, and the
subsequent policies, including for the period at issue, were merely renewals of
previous coverage.

Sonic
also cites Harrivel=s testimony that Sonic informed the Croix Parties it
performed operations outside Texas using non-resident employees.  Further,
Sonic relies on an excerpt from the deposition of Randall Stanford, its chief
financial officer.  Stanford was asked whether he had been informed before
Cochran=s injury that an employee injured
outside Texas would have legal recourse under the workers= compensation act of the other state. 
Stanford replied, ANobody has ever specifically told me that if somebody is
injured in any particular state, that any particular state would be the one
that they file the claim in.@  Stanford was further asked to explain the steps he took to
investigate Sonic=s responsibilities and potential liabilities under the
workers= compensation laws of other states in
which it performed operations.  Stanford responded,

I would have an insurance agent who would be told what
we do, how we do it, where we do it, when we do it, and he would be B he would go out and get some insurance
and come back and say, AOkay, here=s your insurance,@ and we pay our money.  

Apparently,
Sonic seeks to impose a general duty on the Croix Parties to assess and obtain
any necessary insurance coverage for out-of-state operations.  However, Ano legal duty arises on the part of
an insurance agent to extend the insurance protection of his customer merely
because the agent has knowledge of the need for additional insurance of that
customer, especially in the absence of evidence of prior dealings where the
agent customarily has taken care of his customer=s needs without consulting him.@  McCall v. Marshall, 399 S.W.2d 106, 109 (Tex. 1965); Critchfield,
151 S.W.3d at 230; Pickens v. Tex. Farm Bureau Ins. Cos., 836 S.W.2d
803, 805 (Tex. App.CAmarillo 1992, no writ).  








The
evidence showed that the Croix Parties contacted Sonic each year regarding
renewal of its policy.  Thus, the Croix Parties did not customarily place Sonic=s insurance without consultation. 
Sonic cites no summary-judgment evidence indicating existence of such a
relationship.  On this record, the Croix Parties had no duty to obtain an
Alabama policy absent a request by Sonic.

Accordingly,
the Croix Parties did not breach their duty to Sonic by failing to obtain an
Alabama workers= compensation policy.  See Moore, 966 S.W.2d at 692
(holding that agent did not breach where insured admitted he never requested a
specific type of coverage and agent provided policy according to his
understanding of insured=s expectations);  McCall, 389 S.W.2d at 108B09 (holding agent did not breach a
duty by failing to extend insured auto-dealer=s policy to cover new location,
although agent knew of this location, where insured did not request extended
coverage  and there was no evidence of prior dealings where the agent
customarily had handled customer=s needs without consulting him).

In sum,
the summary-judgment evidence established as a matter of law that the Croix
Parties did not breach a duty to Sonic that will support a negligence cause of
action, and Sonic has presented no evidence raising a genuine issue of material
fact.  Accordingly, the Croix Parties negated an element of Sonic=s negligence cause of action.

B.        Gross Negligence

In its
petition, Sonic sought to recover punitive damages based on its allegation of
gross negligence.  The Croix Parties moved for summary judgment on the ground
that the gross negligence claim is not viable because they were not negligent. 
Subject to an exception inapplicable in this case, a finding of ordinary
negligence is prerequisite to a finding of gross negligence.  Shell Oil Co.
v. Humphrey, 880 S.W.2d 170, 174 (Tex. App.CHouston [14th Dist.] 1994, writ
denied); see Sanders v. Herold, 217 S.W.3d 11, 20 (Tex. App.CHouston [1st Dist.] 2006, no pet.). 
Accordingly, the Croix Parties also  negated Sonic=s gross-negligence cause of action.

 

 








C.        Violations of Chapter 541
and DTPA

Sonic
contends the trial court improperly granted summary judgment on its causes of
action against the Croix Parties for violations of Insurance Code Chapter 541
and the DTPA.

To
support these claims, in its petition, Sonic recited the same list of alleged
improper claims-handling practices and misrepresentations about coverage under
the policy that it pleaded against TMI.  In its summary-judgment response and
on appeal, Sonic refers only to the Croix Parties= alleged misrepresentationsCnot any claims-handling practices. 
Therefore, we will address summary judgment on the Chapter 541 and DTPA causes
of action only to the extent they were based on alleged misrepresentations.[23]

Sonic
did not plead any specific misrepresentations purportedly made by the Croix
Parties.  The Croix Parties moved for summary judgment on the ground they did
not make any misrepresentations that caused damages to Sonic.  The Croix
Parties presented the deposition of Harrivel who generally testified she was
unaware that Croix ever lied to Sonic, made any false, misleading or deceptive
statements about Sonic=s coverage, or made any false statements of fact.

In its
summary-judgment response and appellate brief, Sonic=s discussion about its Chapter 541
and DTPA causes of action is rather scant.  Sonic relies solely on two excerpts
from Randall Stanford=s deposition.








First,
Stanford was asked whether Sonic attempted to ascertain if it complied with
workers= compensation laws of other
jurisdictions.  Stanford replied,  A[I]t is our understanding that the
insurance agent is the one who is knowledgeable about this.  If the insurance
agent tells me I have coverage, then I believe him.@  Apparently, Sonic contends the
Croix Parties misrepresented that the policy at issue provided Alabama workers= compensation coverage.  However,
this testimony regarding Sonic=s general reliance on its agent to inform Sonic regarding the
extent of existing coverage does not constitute evidence that Croix actually
represented the policy provided Alabama workers= compensation coverage.

To the
contrary, Harrivel testified she was unaware Croix ever represented that Sonic
did not need to purchase an Alabama policy because the policy at issue would
cover Alabama operations.  In addition, Croix=s letters show he advised Sonic to
purchase an Alabama policy if it employed Alabama residents for operations in
that state.[24]  Finally,
the information pages at the outset of the policy at issue and previous
policies express that the workers= compensation portion applies to the AWorkers= Compensation Law of . . . TEXAS.@  Consequently, the Croix Parties
conclusively proved they did not make any misrepresentations that the policy
provided coverage for Alabama workers= compensation claims. 

Second,
Stanford was asked whether Sonic expected to be repaid by TMI or some other
source when it made voluntary payments to Cochran.  Stanford replied, AI just expected to get the money
back.  I=m not sure how we thought that was
going to occur, but it was B we fully expected to get the money back as soon as this got
resolved in some fashion.@ But, Stanford=s general expectation is not evidence
the Croix Parties represented Sonic would be reimbursed.








Therefore,
the Croix Parties established they did not make any misrepresentations to
Sonic.  In response, Sonic failed to present evidence raising a genuine issue
of material fact.  Accordingly, the Croix Parties negated an element of Sonic=s causes of action under Insurance
Code Chapter 541 and the DPTA.

In sum,
the Croix Parties negated an element of all Sonic=s causes of action.  Accordingly the
trial court did not err by granting summary judgment in favor of the Croix
Parties.  We overrule Sonic=s first issue.[25]

V.  Conclusion

We
reverse the portions of the judgment ordering that Sonic take nothing on all
its contractual and extra-contractual causes of action against TMI to the
extent they are based on TMI=s denial of Cochran=s claim for Texas workers= compensation benefits.  We affirm
the portions of the judgment ordering that Sonic take nothing on all its
contractual and extra-contractual causes of action to the extent they are not
based on TMI=s denial of the Texas workers= compensation claim.  We affirm the
summary judgment on Sonic=s request for declaratory relief.  We affirm the judgment in
favor of the Croix Parties.

 

 

/s/        Charles
W. Seymore

Justice

 

 

 

Judgment rendered and Opinion filed August 27, 2008.

Panel consists of Justices Fowler, Frost, and Seymore.

 









[1]  See Tex. Lab. Code Ann. ' 406.071 (Vernon 2006).





[2]  See generally Tex. Lab. Code Ann. '' 410.001B.308
(Vernon 2006 & Supp. 2007) (prescribing four-tier system for adjudication
of disputes through the workers= compensation
system).





[3]  According to TMI, Sonic also sought and received a
refund of premiums for out-of-state employees it had erroneously included on
its Texas payroll.  Although Sonic raised this refund as an affirmative defense
in this suit, it did not move for summary-judgment on any ground related to the
refund.  Accordingly, we will not further elaborate on the extent to which TMI
refunded premiums or the effect of the refund.





[4]  At one point, Sonic asserts that the Alabama
judgment was in excess of $750,000.  At another point, Sonic suggests $750,000
consists of the Alabama judgment plus Sonic=s
other damages resulting from  the judgment.  We find the judgment somewhat
difficult to construe.  However, it appears the court awarded at least $340,000
in income benefits, unspecified past and future medical expenses, and attorney=s fees.





[5]  See Tex. Lab. Code Ann. ' 409.009 (Vernon 2006) (providing generally that a
person may file a subclaim with the TWCC if the person has provided
compensation and sought and been refused reimbursement from the insurance
carrier).  





[6]  The appeals panel specifically expressed no opinion
on whether Sonic was entitled to reimbursement under the AOther States Endorsement@ for benefits it was required to pay pursuant to  Alabama workers= compensation law.  The appeals panel recognized that
the TWCC was limited to resolving issues concerning compensation under the
Texas act. 





[7]  Sonic alleged that TMI was negligent by: failing to
adequately provide underwriting for Sonic=s
request for workers= compensation insurance; failing to secure or
recommend acquisition of workers=
compensation insurance for Sonic=s
out-of-state employees; failing to properly investigate Cochran=s claim; advising Cochran there was no coverage for
his claim; and failing to settle or otherwise appropriately handle the claim.





[8]  Sonic pleaded that TMI breached the contract by
failing to provide coverage for Cochran=s
Texas workers= compensation claim and refusing to provide coverage
under the Other States Endorsement for Alabama workers= compensation benefits.





[9]  Sonic asserted that TMI violated this duty by
failing to properly investigate, evaluate, negotiate, settle, or otherwise
appropriately handle Cochran=s claim for
benefits.





[10]  Sonic requested declaratory relief that Cochran was
entitled to all rights and remedies under the act and there was coverage for
his claim under the policy.





[11]  We note that Insurance Code article 21.21 was
effective when Sonic filed suit but was subsequently repealed and recodified as
Chapter 541.  However, the pertinent provisions of Chapter 541 are
substantially the same as those in article 21.21. See Act of June 8,
1995, 74th Leg., R.S., ch. 414, '
11, 1995 Tex. Gen. Laws 2988 (amended 2001) (repealed and recodified
2003)(current version at Tex. Ins. Code Ann. '' 541.001-.061 (Vernon Supp. 2008)); Act of May 17, 1995, 74th Leg.,
R.S., ch. 414, '13, 1995 Tex. Gen. Laws 2988, 3000B001 (repealed and recodified 2003) (current version at
Tex. Ins. Code Ann. ' 541.151 (Vernon Supp. 2008)).  Therefore, we will
cite the Chapter 541 provisions.  In its petition, Sonic recited the following
list of alleged Chapter 541 violations:  making, issuing, or circulating or
causing to be made, issued, or circulated an estimate, illustration, circular,
or statement misrepresenting with respect to a policy issued or to be issued:
the terms of the policy, or the benefits or advantages promised by the policy, see
Tex. Ins. Code Ann. ' 541.051(1)(A), (B);  misrepresenting to a claimant a
material fact or policy provision relating to coverage at issue; see id.
' 541.060(a)(1); failing to attempt in good faith to
effectuate a prompt, fair, and equitable settlement of a claim with respect to
which the insurer=s liability has become reasonably clear; see id.
' 541.060(a)(2); failing within a reasonable time to
affirm or deny coverage of a claim to a policy holder; see id. ' 541.060(a)(4)(A); misrepresenting an insurance policy
by making an untrue statement of material fact; see id. ' 541.061(1); misrepresenting an insurance policy by
failing to state a material fact necessary to make other statements made not
misleading; see id. '
541.061(2); and misrepresenting an insurance policy by making a statement in a
manner that would mislead a reasonably prudent person to a false conclusion of
a material fact; see id. '
541.061(3).  Sonic also cites its DTPA allegations to support the Chapter 541
cause of action. See Tex. Ins. Code Ann. ' 541.151 (subject to certain requisites, authorizing cause of action
for act enumerated in Chapter 541 or DTPA section 17.46(b)); Tex. Bus. &
Com. Code Ann. ' 17.46(b) (Vernon Supp. 2008).  





[12]  Sonic alleged that TMI violated Chapter 542 by
failing to timely acknowledge, investigate, accept, and pay Cochran=s claim.





[13]  Sonic pleaded the following acts prohibited by the
DTPA: representing that the insurance policy had characteristics, ingredients,
uses, or benefits which it did not have; representing that the insurance policy
was of a particular standard, quality, or grade, when it was of another;
advertising the insurance policy with intent not to sell it as advertised;
representing that the agreement conferred or involved rights, remedies, or
obligations which it did not have or involve; and failing to disclose
information concerning the insurance policy which was known at the time of the
transaction where such failure to disclose such information was intended to
induce the consumer into a transaction into which the consumer would not have
entered had the information been disclosed.  See Tex. Bus. & Com.
Code Ann. ' 17.46(b)(5), (7), (9), (12), (24) (Vernon Supp.
2008).  Further, Sonic cites its Chapter 541 allegations to support the DTPA
claim.  See Tex. Bus. & Com. Code Ann. ' 17.50(a) (Vernon Supp. 2008) (subject to certain requisites,
authorizing cause of action for act enumerated in section 17.46(b) or Chapter
541, sections 541.001B.061).





[14]  In this section of its motion, TMI contended it was
not liable for contractual or extra-contractual damages based on its refusal to
reimburse Sonic for Alabama benefits because there was no coverage under the
Other States Endorsement.  However, TMI also included some arguments within
this section that do not seem related solely to denial of coverage under the
Other States Endorsement.  For instance, TMI contended it did not owe
negligence duties as alleged by Sonic.  Apparently, this argument could have
been asserted to challenge all Sonic=s
negligence claims.  However, TMI clearly limited all grounds presented in this
section of its motion to negating liability for denial of coverage under the
Other States= Endorsement.  Accordingly, we consider TMI=s Fodge argument as the only summary-judgment
ground challenging Sonic=s causes of action to the extent they are based on
denial of the Texas claim.





[15]  Specifically, the employee alleged that the carrier
(1) underpaid and delayed payment of temporary income benefits, (2) denied and
delayed payment for medical treatment and prescribed medication, (3)
misinformed her that she was not entitled to medical care and could not seek
emergency room care without a doctor referral or prior approval, (4) failed to
communicate promptly with her, and (5) failed to investigate her claim promptly
and reasonably.  Fodge, 63 S.W.3d at 802.





[16]  The court also concluded that the trial court had
jurisdiction over Fodge=s claim that the carrier unduly delayed payment of
temporary income benefits awarded by the TWCC because the TWCC had indeed
determined that benefits were due.  Fodge, 63 S.W.3d at 805.  The court
further held that the trial court lacked jurisdiction over the employee=s claim for additional income and medical benefits
because only the TWCC had authority to award those benefits.  Id. 





[17]  See Amstadt v. U.S. Brass Corp., 919 S.W.2d
644, 652 (Tex. 1996) (recognizing res judicata precludes relitigation of claims
that have been finally adjudicated or arise out of the same subject matter and
could have been litigated in the prior action).  





[18]  Although Sonic has since added some causes of
action, when this court issued Sonic I, Sonic had alleged contractual and
extra-contractual causes of action against TMI, which we referenced
collectively as the Acontract claims.@  See
Sonic, 214 S.W.3d at 481.





[19]  Sonic pleaded that ADefendants@ violated Chapter 542 of the Texas Insurance Code,
governing prompt payment of claims, by failing to timely acknowledge,
investigate, accept, and pay Athe claim.@  This allegation seems directed at TMI, as the
carrier, and not the Croix Parties, as agents.  In fact, on appeal, Sonic does
not reference this cause of action when mentioning its claims against the Croix
Parties. Nevertheless, to the extent Sonic did allege this cause of action
against the Croix Parties, we must affirm the unchallenged summary judgment on
this claim.





[20]  Bill Aston, chief executive officer and former
president of Sonic, testified that Harrivel was the main contact person between
Sonic and Croix, assumed day-to-day responsibilities for dealing with Croix,
and had the most knowledge about Sonic=s
procurement of insurance policies for the relevant years.





[21]  For instance, Sonic asserts the TWCC=s determination of coverage Acame at a substantial cost to [Sonic]@ and AIf the Croix
Parties had promptly informed [Sonic] that some other policy would have been
required to show that coverage was clear in this fact situation without the
requirement of extensive and expensive litigation, then [Sonic] could have
obtained such other policy.@  Sonic also
contends it became subject to the Alabama judgment because Cochran made the
election of remedies after TMI disputed the Texas claim.  Sonic further
contends that it lost several opportunities to sell the company due to the
Alabama judgment.  Additionally, the election of remedies resulted in the TWCC=s determination that Sonic, as Cochran=s subclaimant, was barred from reimbursement for Texas
benefits it voluntarily paid to Cochran.  





[22]  As previously explained, the Croix Parties did obtain
a policy containing an Other States Endorsement that would reimburse Sonic in
certain instances for amounts it was required to pay under Alabama workers= compensation law.  However, TMI denied coverage under
this endorsement because it applied to temporary operations only, which by
definition excluded Sonic=s Alabama project at issue.  Sonic has not challenged
the denial of coverage in this appeal.  Instead, Sonic suggests the Croix
Parties were required to obtain an Alabama workers= compensation policy on Sonic=s behalf to cover its Alabama operations, including
Cochran=s Alabama claim, without regard to permanent or
temporary status.





[23]  Sonic pleaded the ADefendants@ committed these various violations of Chapter 541 and
the DTPA.  The claims-handling allegations seem directed at TMI, as insurer. 
Nonetheless, because Sonic does not challenge summary judgment in favor of the
Croix Parties on Chapter 541 and DTPA causes of action to the extent they stemmed
from claims-handling practices, we need only address the alleged
misrepresentations.





[24]  As we have explained, the TWCC determined that,
absent his election of remedies, Cochran would have been entitled to receive
Texas workers= compensation benefits although he was an Alabama
resident injured while working in Alabama. Therefore, the Croix Parties
actually understated the extent to which the Texas policy at issue covered
employees injured out of state.  Nevertheless, Sonic apparently complains that
the Croix Parties misrepresented that the policy provided coverage for Alabama
workers= compensation claims.





[25]  Based on our disposition of Sonic=s first issue, we need not consider its second issue,
contending alternatively that the trial court improperly granted summary
judgment on the Croix Parties= ground that
all causes of action were precluded by Fodge.